KATE CANNON ET AL. v. CHARLES A. BARRY.

59  289
•84  662

59  289
89  521
j89  549
89  554
89  568
89  570
j89  577

1. LIMITATION OF ESTATES.  *Shifting use.  Contingent remainder.*

A conveyance for the use of a person for life, and at his death for the use of his children, as they become of age or marry, vests a life-estate in the first usee, with the remainder in fee for his children, contingent upon the happening of the specified events.

2. SAME.  *Rule in Shelley's case.  Trust.*

The rule in Shelley's case is applicable to trust estates, but is operative only where by the same instrument a freehold is conveyed to the ancestor, with remainder of a like estate to his heirs, or heirs of his body, who take in succession, because of their character as such.

3. SAME.  *" Children."  A word of purchase.  Wild's case.*

The word children is ordinarily a word of purchase, except in certain cases, as, for instance, Wild's case, in which the conveyance being *in præsenti* to a man and his children, it was held to be a word of limitation, because he had no children, and more than a life-estate would not otherwise pass.

4. SAME.  *Perpetuity.  Construction of statute.*

Under the proviso of Hutch. Code, p. 609, § 24, which authorizes conveyances to a succession of donees then living and the heirs or the heirs of the body of the remainder-men, the limitation may be to a specified class of such heirs, as, for instance, those heirs who attain majority or marry.

5. SAME.  *Entailment.  When fee must vest.*

Limitation of an estate does not violate this rule against perpetuity if the fee must vest within twenty-one years and ten months after the death of the last grantee living at the date of the conveyance.

6. WASTE.  *Bill by contingent remainder-men.  Injunction.*

Contingent remainder-men whose estate has not vested by the happening of the event cannot maintain a bill against the life-tenant in possession to recover damages for past waste, but may enjoin him from future waste, to the detriment of the inheritance.

7. SAME.  *Remainder-men in trust.  Parties to bill.*

If, in such case, the bill is filed by the first contingent remainder-men of the trust estate, the trustee and the subsequent contingent remainder-men should be made parties.

8. SAME.  *Using timber.  Removing houses.*

Using the timber of a heavily wooded farm in rebuilding fences, clearing a small part of the land, and removing tenants' cabins to better locations, to render the place more productive, is not waste in this State, where, owing to the different condition of the country the English rules do not apply.

9. WASTE.  *Permissive.  Liability of life-tenant.*

Courts of equity will not hold a life-tenant liable for permissive waste, such as allowing the residence to decay, failure to keep up the orchard, and the like.

10. SAME.  *Voluntary.  Destroying gin-fixtures.*

A purchaser of the life-estate, who, at the instance of the life tenant, removes the running gear from the gin, or permits the gin-house to be dismantled, even without his knowledge, is guilty of voluntary waste.

11. SAME.  *Timber.  Rights of life tenant.*

He may fell the timber in such quantities and at such places as not seriously to impair the value of the inheritance, in order to redeem the land, pay taxes, or even for his own profit.

12. SAME.  *Taxes.  Forfeiture.  Receiver.*

If such purchaser allows a body of unproductive woodland not essential to the farm to be forfeited for taxes, although the valuation by the assessor and the county levy were excessive, he will be ordered to redeem, and, on failure, a receiver will be appointed.

13. TAXES.  *Forfeiture.  Correction of errors.*

Under Code 1880, § 569, if the State has no title to land forfeited for taxes, it may, by the proceeding therein authorized, be stricken from the books of the auditor of public accounts.

APPEAL from the Chancery Court of Clay County.

Hon. F. A. CRITZ, Chancellor.

*Houston & Reynolds*, for the appellants.

1. If proper parties were found to be wanting at the final hearing, and no previous objection was made, the court should not have dismissed the bill, but have remanded it to rules in order that the parties could be brought in.  1 Dan. Ch. Prac. 287.  The trustees had no interest in the suit.  Remainder-men need not look to trustees for protection, but may apply for injunctions against waste committed by life-tenants.  Kerr on Injunctions, 257 ; 2 Dan. Ch. Prac. 1630.  Where real estate subject to an entail is in controversy, it is generally sufficient to make parties the first tenant in tail in whom is an estate of inheritance and those claiming prior interests.  If the bill is filed by the party having the first estate of inheritance, persons who have subsequent contingent interests will usually be bound by the decree.  *Lloyd* v. *Johnes*, 9 Ves. 37 ; Story Eq. Pl. § 145 – 147.

2. R. L. Cannon had only an estate for life, whatever may be the effect of the limitations, and the appellee has an estate for the life of R. L. Cannon. There is in some one an interest in reversion or remainder. *Jordan* v. *Roach*, 32 Miss. 481; 1 Fearne on Remainders, 20; 2 Jarman on Wills, 329–359. The limitation to the children of R. L. Cannon is not void for remoteness, either at common law or under the statute. *Caldwell* v. *Willis*, 57 Miss. 555; *Busby* v. *Rhodes*, 58 Miss. 237. The object of Act 1822, § 24, was to abolish estates tail, with the exception in the proviso of a conveyance to a succession of donees then living, and the heirs of the body of the remainder-man, and in default to the right heirs of the donor in fee. If the limitation is void for remoteness, the first taker has a fee. Depending on two contingencies, if one only is valid, the limitation will take effect upon this. *Armstrong* v. *Armstrong*, 14 B. Mon. 333; Lewis on Perpetuities, 21; 1 Jarman on Wills, 267; 2 Wash. Real Prop. 652. This conveyance vests in R. L. Cannon a life-estate, and in his children a contingent shifting use or contingent remainder if the limitation is valid, or a vested remainder if it is void.

3. If the complainants have only the contingent interest after the termination of the life-estate, they can maintain this bill to enjoin waste, for their interests not being vested no action at law will lie. *Stansfield* v. *Habergham*, 10 Ves. 273; *Brashear* v. *Macey*, 3 J. J. Marsh. 89; 1 Fearne on Remainders, 563; 2 Story Eq. Jur. § 914; Eden on Injunctions, 206; 2 Dan. Ch. Prac. 1629, 1630; 2 Hilliard on Torts, 93; 2 Wash. Real Prop. 582. An account will be granted for waste committed, and, if necessary, the amount recovered will be invested under the direction of the court for the benefit of the parties interested, until the happening of the event upon which the fee shall vest.

4. The appellee is liable for allowing part of the land to become forfeited for taxes. This was his debt, for which his personalty was first liable. Code 1880, § 478. A life-tenant in possession must pay all the taxes on the land during his term. *Varney* v. *Stevens*, 22 Maine, 331; *Prettyman* v. *Walston*, 34 Ill. 175; *Cairns* v. *Chabert*, 3 Edw. Ch. 312; 1 Wash. Real Prop. 96, 125. He could not hold the land which was

profitable, and permit that which was uncultivated to be forfeited. If the place is out of repair, even by R. L. Cannon's neglect, the appellee is bound to renovate it to the extent of the rents received by him. He is the owner of the property, with all the burdens which the law imposed upon it at the time he became the owner. One of these was a reasonable repair to prevent waste and decay.

*Thomas E. Bugg*, on the same side.

1. Remainder-men can maintain the bill without waiting for the trustee to act, and the court proceeds more readily in cases of trust. Kerr on Injunctions, 257, 269. Tenants in tail represent all subsequent interests, and hence J. N. Cannon's children need not be made parties. Story Eq. Pl. § 144. Non-joinder of formal parties is not fatal, and it is sufficient if all persons interested in the subject-matter are brought in. Story Eq. Pl. §§ 69, 77, 136, 228, 229. No distinction in respect to waste exists between vested and contingent remainder-men, but either will be protected. 2 Dan. Ch. Prac. 1629–1631; 1 Addison on Torts, 381. The trustee who has failed to act, and who has no personal interest in the subject-matter, is not a necessary party.

2. Both voluntary and permissive waste are proved and the remedy is clear. 2 Story Eq. Jur. § 909; Kerr on Injunctions, § 17. "Waste is whatever tends to the permanent loss of the owner in fee, or to destroy or lessen the value of the inheritance." 1 Wash. Real Prop. 108; *McGregor* v. *Brown*, 10 N. Y. 114. Whatever is lasting damage is waste. 1 Wash. Real Prop. 108. Relief to restrain waste is usually granted at the suit of the remainder-man or reversioner against the tenant who is guilty of acts of permanent injury to the freehold. *Livingston* v. *Reynolds*, 26 Wend. 115, cited and approved in *Eskridge* v. *Eskridge*, 51 Miss. 522. An estate for life, however created, is always impeachable of waste, unless the contrary be provided by express stipulation. Kerr on Injunctions, 256, § 1. In this case the deed of trust does not provide for waste. Tenant for life is liable for both voluntary and permissive waste. 1 Wash. Real Prop. 108, § 2. Tearing a house down is voluntary waste. Kerr on Injunctions, 250, § 38; 1 Wash. Real Prop. 108. Tearing down farm-

houses is placed on the same footing with that of tearing down a mansion-house. Kerr on Injunctions, 270. Suffering decay without repair is permissive waste. 1 Wash. Real Prop. 108. Under the grant in this case, the life-tenant has no authority to cut timber except for specific purposes, absolutely necessary, since he is always impeachable of waste, unless the contrary be provided by express stipulation. Kerr on Injunctions, 256. The court will observe that the timbered land, called by opposite counsel " wild land," is not wholly " wild," but joining and appendant to the plantation, — in fact, the two classes of land, timbered and improved, constitute one body of land, and make up the premises in controversy; and the effort of the life-tenant to treat them otherwise is a violent and unwarranted assumption. We admit the life-tenant's right to estovers, including house-bote, plough-bote, and hay-bote. 1 Wash. Real Prop. 99. And we give him the full benefit of the rule laid down as applicable to this country, being less strict than in England, to the extent of building new fences or walls, provided such new wall or fence is not for the purpose of enclosing newly cleared grounds, on which the life-tenant has made wholesale destruction of timber. 1 Wash. Real Prop. 101. We invoke the principle, in behalf of the reversioners, in the last citation, that suffering houses to go to decay and then cutting timber to repair them is double waste, and so tearing houses down, and moving them out on a strip of land left by the grantor for timber purposes, is double waste; because the timber on the new site is destroyed, and it requires more timber than otherwise it would to put in repair the house moved. Has the defendant a right to cut timber for any purpose, except for estovers, which we have just conceded? We think not. Yet he tries to justify on various grounds: that, if custom sanctioned it, there would be no waste, for instance, cutting for staves and shingles; but it is not shown that custom authorizes it in this case. It is contended that a life-tenant may clear the land for agricultural purposes, and the case of *Jackson* v. *Brownson*, 7 John. 227, is relied on to support it, but that case is not in point.

3. The grant in the deed made by Rusha Cannon is not

obnoxious to the rule against perpetuities, and it is unnecessary to enter into a discussion of the questions of vested and contingent remainders, executory devises, springing and shifting uses, and the rule in Shelley's case. To enter that domain of subtle and intricate learning, would tend more to cast doubt and difficulty over the case than to elucidate it. The rights of the parties under the conveyance, in the case at bar, are fixed under the statute. Proviso to § 24, Hutch. Code, 609 ; *Carroll* v. *Renich*, 7 S. & M. 798 ; *Kirby* v. *Calhoun*, 8 S. & M. 462 ; *Newell* v. *Newell*, 9 S. & M. 56.

*Barry & Beckett*, for the appellee.

1. The appellants have no title. As the immediate donee had a life estate, and the limitation is subject to the rule against perpetuities, the appellee has the fee. *Pressgrove* v. *Comfort*, 58 Miss. 644 ; *Hudson* v. *Gray*, 58 Miss. 882. The statute furnishes the rule for its construction. An estate within the proviso is valid, one without is void. *Kirby* v. *Calhoun*, 8 S. & M. 462. This limitation is also void at common law. What kind of estate is this ? An estate to a person for life, and then to another on his attaining majority, is a contingent remainder. 2 Wash. Real Prop. 519. Every devise to a person in derogation of, or in substitution for, a preceding estate in fee-simple, is an executory devise. *Brattle Square Church* v. *Grant*, 3 Gray, 142, 151. Such limitations, when made by will, are termed executory devises, and when contained in conveyances to uses, assume the name of springing or shifting uses. *Brattle Square Church* v. *Grant*, 3 Gray, 142, 149 ; 2 Wash. Real Prop. (3d ed.) 572, § 7. It is clear that if the deed had been to R. L. Cannon for life, and then to such of his children as should marry or arrive at the age of twenty-one years, it would have been a contingent remainder. 2 Wash. Real Prop. 521. But the deed is to trustees, for the use of certain persons. Hence it is not a remainder, but a use. If it had stopped there, it would have been a contingent use ; but when it attempts to substitute a limitation to J. N. Cannon and his children, then if it were a will it would be an executory devise, but being a deed of trust makes it a contingent shifting use. The rule against perpetuities applies to executory devises, contingent remainders, con-

ditional limitations, and contingent shifting uses. 2 Wash. Real Prop. (3d ed.) 587, 588, § 21 ; *Brattle Square Church* v. *Grant*, 3 Gray, 146–156 ; 2 Fearne on Remainders, 392, §§ 709, 710. The test is not whether the estate may vest, but whether there is any possibility that it may not vest within twenty-one years and a fraction after a life or lives in being. *Brattle Square Church* v. *Grant*, 3 Gray, 152, 155 ; 2 Fearne on Remainders, 392, § 709 ; *Caldwell* v. *Willis*, 57 Miss. 555. If the limitation falls within the rule against perpetuities, it is void *ab initio*, and the estate goes to the first taker discharged of all conditions. 2 Wash. Real Prop. (3d ed.) 23, 24, § 31 ; *Brattle Square Church* v. *Grant*, 3 Gray, 157 ; 2 Wash. Real Prop. 559, 561, § 16, 563, § 17 and note ; *Pressgrove* v. *Comfort*, 58 Miss. 644. Who is the first taker ? It is either Rusha Cannon, the donor, R. L. Cannon, the donee, or the trustees. It does not go to the trustees, for no beneficial interest is conveyed to them. *Brattle Square Church* v. *Grant*, 3 Gray, 142. There is some doubt as to whether Rusha Cannon or R. L. Cannon is the first taker. It is laid down in Washburn that " the *reservation* by a grantor of the use and control of the granted premises during his life creates in him a life-estate with all its incidents." 1 Wash. Real Prop. (3d ed.) 89 ; *Webster* v. *Webster*, 33 N. H. 18 ; *Richardson* v. *York*, 14 Maine, 216. On the other hand, where the testator reserved a life-estate to his mother, it was held that she was not the first taker. *Brattle Square Church* v. *Grant*, 3 Gray, 142. This would seem to be more consonant with reason and logic. It would appear strange to say that a person could grant to himself what he already has, or any part of what he already has. The true rule would be that he granted away all but a life estate himself, and if that is true he would not hold under the deed, but by his original title, and the deed would only be evidence that he had parted with a portion of his original interest. Rusha Cannon nor his wife can be held to be the first taker under the deed. If not, then clearly R. L. Cannon is the first taker, and Barry, who bought his interest, is the owner in fee. But as neither Rusha Cannon nor R. L. Cannon are the complainants, it is immaterial which is the immediate donee. The limitation to the appellants is void. Except in New York, it

is held generally that where there is a limitation of this character, the estate in fee goes to the first taker. *Powell* v. *Brandon*, 24 Miss. 343; *Hampton* v. *Rather*, 30 Miss. 193; *Carradine* v. *Carradine*, 33 Miss. 698; *Jordan* v. *Roach*, 32 Miss. 481, 611, 612; *Pressgrove* v. *Comfort*, 58 Miss. 644; 2 Wash. Real Prop. (3d ed.) 559–561, § 16; *Brattle Square Church* v. *Grant*, 3 Gray, 142, 157. The rule in Shelley's Case applies to equitable as well as legal estates, but the trust must be executed and not executory. 2 Wash. Real Prop. (3d ed.) 455, § 30, 557, § 10. A trust is executed when the grantor prescribes everything, and nothing is left to be done except the vesting. It is executory where something is to be done by the trustees to pass the legal title, as making a deed. 2 Wash. Real Prop. (3d ed.) 451.

2. Where the remainder is not vested but contingent, it is the duty of the trustees to bring the suit. Kerr on Injunctions, p. 256, § 1. The appellants should make the trustees parties defendant. In all suits respecting the trust property, the trustees are indispensable parties. *Hill* v. *Boyland*, 40 Miss. 618, 640; *Knapp* v. *Railroad Co.*, 20 Wall. 117; *Kerrison* v. *Stewart*, 93 U. S. 155; *Coal Co.* v. *Blatchford*, 11 Wall. 172. It is also evident that J. N. Cannon and his children should be made parties. They have the same interest in the property as R. L. Cannon and his children, except in the alternative degree, and they are neither privies in blood or estate to R. L. Cannon's children. Story Eq. Pl. §§ 137, 138.

3. The basis that the account for waste is made on is the damage to the inheritance, and no person is entitled to an account unless he can show that he is, or will be, entitled to the inheritance. 2 Hilliard on Torts, 154, § 12; Kerr on Injunctions, 286, § 23. Voluntary waste is by some act of commission, as cutting trees. Permissive waste is by some act of omission, as suffering buildings to go to decay. Kerr on Injunctions, 240, § 3. Equity cannot deal with permissive waste, except under very special circumstances, which are not shown in this case. 2 Story Eq. Jur. § 913 and note 1; Kerr on Injunctions, 252, 253, and § 40. Now what acts of a voluntary character may a tenant for life perform? He can cut timber to raise money to pay taxes or to pay an overseer.

*Crockett* v. *Crockett*, 2 Ohio St. 180. Cut shingles and staves for sale. 1 Wash. Real Prop. 129, § 13. Clear the land for agricultural purposes. *Jackson* v. *Brownson*, 7 John. 227, 232. Appropriate the felled timber. 1 Wash. Real Prop. 128, § 8; Taylor's Landlord and Tenant, § 353 and note 3. Build new fences. *Pynchon* v. *Stearns*, 11 Met. 304; *Jackson* v. *Tibbits*, 3 Wend. 341; 1 Wash. Real Prop. 118, § 10. Pull down one house and build another. 1 Wash. Real Prop. 132, § 25–27; Taylor's Landlord and Tenant, § 348. Cut timber for fencing. 1 Wash. Real Prop. 117, § 9, 127, §§ 4, 6. Or for necessary repairs. Kerr on Injunctions, 244, § 15; 1 Wash. Real Prop. 115, § 2. Is not bound to repair a house already ruinous when he takes possession. 1 Wash. Real Prop. 117, § 9; 135, § 32. May cut firewood for himself and family and servants on the farm. 1 Wash. Real Prop. 115, § 2. May cut trees on wild land, and derive considerable profit. *Sargent* v. *Towne*, 10 Mass. 303; *Conner* v. *Shepherd*, 15 Mass. 164. The general rules of waste are subject to exceptions in what are called timber estates, where timber may be cut for profit. Kerr on Injunctions, 242, § 9; Hilliard on Injunctions (2d ed.), 330, § 6. To what extent timber may be cut must be left to the sound discretion of a jury, considering the usages of the country. *Jackson* v. *Brownson*, 7 John. 227. The laws of waste are essentially different in this country and in England. This is a new country, and nothing is waste unless it is actually prejudicial to the inheritance. 1 Wash. Real Prop. 116, § 10; *Pynchon* v. *Stearns*, 11 Met. 304; *Jackson* v. *Tibbits*, 3 Wend. 341. The tenant must keep the premises in repair, but is not bound to expend extraordinary sums for that purpose. 1 Wash. Real Prop. 135, § 31; 136, 137, § 39. The common law doctrine that anything is waste which impairs the evidence of title, as drawing in fences, has no application in this country, where the lands are described by land-office numbers. *Pynchon* v. *Stearns*, 11 Met. 304, 310, 311. No change in the mode of culture from arable land to pasture and *vice versa* is waste. 1 Wash. Real Prop. 131, § 21. What are the rights of the defendant, and what strictness is required of the complainants to sustain an injunction for waste? The rights of a

tenant for life pass to his grantee, or assignee, or to a purchaser at a judicial sale. 1 Wash. Real Prop. 118, § 11. There can be no account in equity of acts unattended with profit to the defendant, and the measure of the account is his actual receipts. Kerr on Injunctions, 228, § 6. If the defendant denies that he is insolvent, and that he intends to commit further injury, the bill will be dismissed and the complainants left to their action at law. High on Injunctions, § 429. And so if the complainants' title is disputed or doubtful. High on Injunctions, § 429; *Loudon* v. *Warfield*, 5 J. J. Marsh. 196, 199. The rule is, " no injunction, no account; " and where it does not appear that future injury is threatened, an account will be refused and the bill dismissed. High on Injunctions, § 451 and note, and § 429; Kerr on Injunctions, 228, § 6; *Crockett* v. *Crockett*, 2 Ohio St. 181. To sustain a bill for injunction the damage must be irreparable, and such as cannot be compensated at law. *Atkins* v. *Chilson*, 7 Met. 398. A remainder-man for life cannot call for an account. Kerr on Injunctions, 286, § 23. Neither can one claiming by a contingent remainder or by way of executory devise. 2 Hilliard on Torts, 154, § 17; *Hunt* v. *Hunt*, 37 Maine, 333. The land forfeited for taxes was not a necessary adjunct to the place. It was timber land, of which enough was reserved to cover the needs of the arable land for all time. Excess in the valuation and levy rendered the sale void. *Shattuck* v. *Daniel*, 52 Miss. 834; *Virden* v. *Bowers*, 55 Miss. 1. All means were used by the appellee in vain to have the taxes reduced, and to permit the void sale was his best and only remedy.

*R. C. Beckett*, on the same side, argued orally.

Chalmers, C. J., delivered the opinion of the court.

The complainants (appellants) are the children of R. L. Cannon, and claim, under the deed executed by their grandfather, Rusha Cannon, to be the remainder-men of the property therein conveyed for life to their said father. They bring this bill against the defendant Barry, who has become the purchaser at bankrupt sale of the life-estate of the father, alleging that he has committed, and is committing, waste upon the

inheritance, for which they seek an account for the past and an injunction for the future. It is objected by the defendant that the limitation in the deed of the grandfather, under which the complainants claim, is void under the rule in Shelley's Case, or too remote both under the common-law rule against perpetuities, and under our statutory regulations on the same subject. The deed of the grandfather was executed on the 22d of March, 1845. By it the grantor conveyed the real estate and a large number of negro slaves to three trustees, and to the survivor of them, and to the heirs of the survivor in trust, for the use and benefit of his son, R. L. Cannon, during his life, and at his death for the use and benefit of all the children of R. L. Cannon, who should attain the age of twenty-one years or marry ; and if R. L. Cannon should die leaving no child who should attain majority or marry, then the property to be held by the trustees for the benefit of the grantor's son, J. N. Cannon, for life, and at his death for the use and benefit of such of his children as should attain the age of twenty-one years or marry ; and if J. N. Cannon should die leaving no child or children who should attain majority or marry, then said property should be equally divided among all the grandchildren of the grantor, except the children of Mrs. Parchman. The grantor reserved a life-estate in all the property for himself and wife. After the death of the grantor and wife, R. L. Cannon, in 1850, took possession of the property, and remained in possession of it until his own bankruptcy and the purchase by the defendant at the assignee's sale in 1870. He is still living, and none of his children have come of age or married.

The rule in Shelley's Case applies as well to trust estates as to conveyances of the legal title, but the conveyance in question does not fall within its scope. To set the rule in operation there must be by the same instrument a freehold conveyed to the ancestor, with remainder over of the same character of estate to his heirs, or heirs of his body generally, as a denomination or class of persons to take in succession as heirs, because of their character as such. In other words, the heirs must take as limitees and not as purchasers. A life-estate, which is an estate of freehold, is by the deed in this case con-

veyed to the father, and by the same instrument the remainder is limited to such of his children as shall attain majority or marry, but it is evident that the latter take not by limitation but by purchase. In determining the construction of any instrument of entailment, the word "children" is rarely held synonymous with heirs or heirs of the body. The principal cases in which it is so held are instances illustrating the rule announced in Wild's Case, that is to say where there is an immediate grant or devise to a man and his children, and the grantee is without children. It being manifest in such cases that the intent was to vest an estate *in præsenti*, and that being impossible by reason of the non-existence of a portion of those named, in order to effectuate the intention, the word children must be construed as a word of limitation and not of purchase, because otherwise there would be a grant or devise of a life-estate only, and the fee would remain in the heirs of the devisor, or in the person of the grantor, as the case might be. The Supreme Court of New York declared, in the case of *Chrystie* v. *Phyfe*, 19 N. Y. 344, that in no other class of cases had the term children ever been held to be a word of limitation. This would now be perhaps too strong an expression (see cases cited in 3 Jarman on Wills, 106, note 5, Am. ed.), but certainly cases to the contrary are rare and exceptional in character. In *Guthrie's Appeal*, 37 Penn. St. 9, it was said that "children, in law, is as certainly held to be a word of purchase as 'heirs of the body' are to be words of limitation." It is manifest that the rule in Wild's Case does not apply to the conveyance before us, though R. L. Cannon was without children at the date of its execution. So far from there being manifested any intention of a conveyance *in præsenti* to the children, the contrary intention is plainly evinced by giving them a remainder only after the termination of a preceding life-estate in the father. It follows that the limitation over to the children was to them as purchasers, and that the life-estate of the father was not by the rule in Shelley's Case converted into a fee.

Neither does the limitation offend against the rule against perpetuities, nor against our statutes on that subject. The common-law rule only required that the limitation should

come to an end and the ultimate fee should vest within twenty-one years and ten months after the death of the last survivor of any number of successive donees or devisees, who were in being at the time when the conveyance took effect, and such also is the requirement of the statute in force when this deed was made. By that statute (Hutch. Code, 609, § 24), estates tail were converted into estates in fee, " provided that any person may make a conveyance or devise of lands to a succession of donees then living, and the heir or heirs of the body of the remainder-man, and in default thereof, to the right heirs of the donor in fee simple." By our later statutes the number of donees is restricted to two, but even under these enactments the conveyance in question would not be condemned. R. L. Cannon and J. N. Cannon were both living when the deed was made. It is not possible to conceive of any state of facts under which, by the terms of the deed, the vesting of the ultimate fee can be prolonged beyond a period of twenty-one years and ten months after the death of both of them. Thus, if R. L. Cannon should die leaving a child *en ventre sa mere*, such child must be born within ten months after the death of its father. If such child attains majority, the fee at once vests in him and the limitation comes to an end. If, on the contrary, such child should die before majority or marriage, J. N. Cannon would take a life estate, if he were then alive; and within twenty-one years and ten months after his death the fee must vest in some of his children, who have attained majority or married, or in the grandchildren of the grantor, excluding the children of Mrs. Parchman. If J. N. Cannon should die, leaving minor children, before the death of the unmarried minor child of R. L. Cannon, then upon the death of such child the fee would remain temporarily in the trustees, without any usee whose interest could vest, but with a contingent use in J. N. Cannon's children; and if J. N. Cannon should die without children before the death of the unmarried minor child of R. L. Cannon, then the fee would vest at once in the grandchildren of the grantor. No state of facts therefore can be imagined in which, according to the terms of the deed, the limitation can be prolonged more than twenty-one years and

ten months after the death of the last donee in being when it was executed, and wherever this is so the limitation is good, regardless of the length of time that may elapse from the date of its execution.

The learned Chancellor, from whose decision the appeal is prosecuted, construed the proviso to the statute prohibiting estates tail (Hutch. Code, *supra*), as prescribing the only deviation permissible, and as fixing, not a limit within which such limitations might be made, but as laying down the exact formula to be observed in creating them. As the proviso declares that a conveyance may be made to a succession of donees then living, and to the heir or heirs of the body of the remainder-man, he was of opinion that the limitation in this case was void, because it was not to the heirs of the body of the remainder-man generally, but to a specified class of such heirs, to wit, those who should attain majority or marry. This is erroneous. The object of the statute is to establish a limit beyond which the grantor cannot go, but within which he may exercise unbounded discretion, so that he may limit the remainder to the first born or to the last born, or to the married or single, or to the adult or minor heirs of the life tenant, taking care always that the fee shall vest within the period prescribed by the rule against perpetuities.

Our conclusion is, that the deed of the grandfather conveyed the legal title to the trustees, vesting in R. L. Cannon a life-estate in use, with a shifting use or contingent remainder in fee in his children; such use or remainder to become fixed and vested upon the happening of the contingencies specified.

R. L. Cannon being still alive, the interest of the complainants remains contingent, dependent upon the double contingency of their surviving him, and of their attaining majority or marrying. Hence the bill cannot be maintained so far as it seeks an account of past waste, since their interest not being vested, and it being doubtful whether it will ever become so, they would have no right to any recovery that might be obtained. Whether they are entitled to any other relief depends upon the character of the acts done or permitted by the life tenant in possession. The *locus in quo* consists of twelve

hundred acres of land, of which about three hundred acres only are arable, the balance being swampy in character and heavily timbered. When the defendant took possession, the arable portion was in such condition that it was wholly unproductive for the first year thereafter. By rebuilding the fences, clearing thirty or forty acres additional, removing some of the tenants' cabins to other locations, and building several new ones, he has brought up the rental value of the place to something less than three hundred dollars per annum, exclusive of the amounts expended each year in making these improvements. In accomplishing these results, he has freely cut and used the growing timber on the place, of which there is a superabundance for this and all other purposes. In so doing, as well as in removing the cabins, and perhaps in other respects, he has unquestionably been guilty of that which would be deemed waste under the English authorities, but which we cannot pronounce to be such under the state of things existing with us, and under the circumstances of this case. The condition of this country and that of England are wholly dissimilar, and that which would be a safe test there is altogether inapplicable here. With us, speaking generally, it may be said that nothing will ordinarily be held to constitute waste which is dictated by good husbandry, and promotes rather than diminishes the permanent value of the property as an estate of inheritance. That such has been the nature and effect, in the main, of the acts of the defendant, is incontestably established by the testimony in the case.

He has been guilty of permissive waste in suffering the mansion to go to decay, and also perhaps with respect to the orchard, but courts of equity take no jurisdiction of permissive waste by a life tenant. Their constant interference in such matters would render the enjoyment of the life estate impossible. But the defendant has also been guilty of three acts of unmistakable voluntary waste. He detached from the gin-house and sold the running gear or machinery thereto belonging; nor does it change the character of the act that it was done at the instance of the father of the complainants, who received a portion of the price obtained. The father had no longer any interest in the property, and was not the legal

guardian of his children.   He has suffered the gin-house to be partially dismantled, and though it was done without his knowledge he is nevertheless responsible for it.

More serious than these was his act in voluntarily permitting a large body of the woodland to become forfeited to the State for unpaid taxes.   That the land forfeited was unproductive, that there remained belonging to the estate sufficient wood to supply its wants indefinitely, that the land had been overvalued by the assessor, and that the defendant had tried in vain to have the valuation reduced, and that the board of supervisors in making the levy of county taxes had exceeded the limit of their authority, afford no excuse for his action. He took the estate as a whole, and was bound to so preserve it.   He cannot segregate the profitable from the unprofitable, nor the sterile from the fertile, by preserving the one at the sacrifice of the other.   The taxes were his individual debt, and the fact that they constituted a lien on both his own interests and that of the remainder-men made it his duty to keep them down.   While a sale for taxes levied in excess of authority would by the law then in force have conveyed no title to the purchaser (see *Gamble* v. *Witty*, 55 Miss. 26), it would have cast a cloud upon the title, and by enabling the purchaser to add onerous damages to the amount paid, as a lien on the land (see *Cogburn* v. *Hunt*, 56 Miss. 718; s. c. 57 Miss. 681), it would have added to the burden cast upon the tenants in remainder.

These acts of voluntary waste call for relief.   The defendant should be required, within such time as the Chancellor may deem reasonable, to redeem or repurchase the forfeited lands, and upon his failure so to do a commissioner should be appointed to sequester the rents, or so much of them as may be necessary for this purpose.   For the purpose of redeeming the lands and of hereafter keeping down the taxes, the defendant will be permitted to fell timber in such quantities and at such places as do not seriously impair the value of the inheritance. As tenant for life he has the right to do this, even for purposes of profit.   *Sargent* v. *Towne*, 10 Mass. 303; *Conner* v. *Shepherd*, 15 Mass. 164.   If it be true that the State has no title to the forfeited lands, by reason of an invalid sale or levy

of taxes, an easy remedy for the defendant is found in § 569 of the Code of 1880, which provides a method of striking from the auditor's books lands improperly claimed by the State. Lastly, the defendant should be enjoined from any further acts of voluntary waste to the detriment of the inheritance. · When the case is returned to the lower court, the bill should be amended by making the trustees, or the survivor of them, parties. They are clothed with the legal title to the estate, and while the contingent remainder-men need not wait on them for an assertion of their rights, the holders of the legal title should, where it is possible, be before the court. Kerr on Injunctions, 256, 267. So, also, should J. N. Cannon and his children, if he has any, be made parties. They stand in the same attitude as the complainants, and equally with them are contingent remainder-men. It is only where the first tenant in tail *in esse* has a vested estate of inheritance that he is held to so far represent all subsequent tenants in tail as to dispense with the necessity of joining them. The doctrine does not apply to a contingent remainder-man with no vested interest. Story's Eq. Pl. §§ 145–147.

*Reversed and remanded.*