# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00800-COA

IN THE MATTER OF THE ESTATE OF                    **APPELLANTS**
BRENDA LOUISE BARGAS FLOWERS:
CLAIRE C. FLOWERS AND BRENDA JANE
FLOWERS PAIXAO


v.


THE ESTATE OF BRENDA LOUISE BARGAS             **APPELLEES**
FLOWERS, THROUGH ITS EXECUTOR, KNOX
LEMEE FLOWERS, CECIL C. LANG AND
LINDA S. LANG

| | |
|---|---|
| DATE OF JUDGMENT: | 05/06/2016 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | DAVID NEIL MCCARTY |
| ATTORNEYS FOR APPELLEES: | FLOYD M. MELTON JR. |
| | RICHARD A. OAKES |
| | FLOYD M. MELTON III |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 02/06/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. Claire Clements Flowers (Claire) and Brenda Jane Flowers Paixao (Jane) appeal the judgment of the Leflore County Chancery Court denying their request for an accounting of the estate and testamentary trust of their mother, Brenda Bargas Flowers, and finding that they had no current interest in their mother's estate. Claire and Jane also appeal the chancery court's denial of Claire's motion for leave to amend several of her previously filed petitions.

¶2.     Upon review, we affirm the chancellor's denial of Claire's motion to amend her petitions.  However, we find that Claire and Jane have limited rights and related standing as holders of a shifting executory interest to prevent future waste, and we therefore find that the sisters have standing to request an accounting of their mother's estate and testamentary trust pursuant to their limited rights.[1]  As a result, we reverse the portion of the chancellor's judgment denying their request for an accounting, and we remand this case for further proceedings consistent with this opinion.

**FACTS**

¶3.     Richard and Brenda Flowers married and had three children:  a son, Knox Lemee' Flowers, and two daughters, Claire and Jane.  In 2004, Claire gave birth to a son, D.A.[2] Richard and Brenda adopted D.A. in 2005.  On April 15, 2006, Richard passed away.  About three months later, on July 24, 2006, Brenda executed her last will and testament.  Almost a month later, on August 25, 2006, Brenda passed away.

¶4.     Brenda's will appointed Knox as her estate executor and provided that he "serve without bond, inventory, appraisal[,] or accounting to any [c]ourt."  The will also established a trust that named D.A. and his descendants as the income beneficiaries.  The will provided

---

[1] *See Hemphill v. Miss. State Highway Comm'n*, 245 Miss. 33, 46, 145 So. 2d 455, 461 (1962) (holding that executory-interest owners have "certain limited rights to enjoin the possessory owner from waste of the inheritance and to recover damages for injuries [that] . . . substantially [diminish] its value").  *Cf. Cannon v. Barry*, 59 Miss. 289, 302-05 (1881) (holding that contingent remainder beneficiaries could not recover damages from a life tenant for past waste but could enjoin the life tenant from future waste to the inheritance's detriment).

[2] Because D.A. is a minor, we refer to him by his initials.

2

for the trust's termination either at the time of D.A.'s thirtieth birthday or his death, whichever event occurred first. The will further stated that, at the time of termination, the trust's assets were to be divided evenly between D.A. and Knox. The will then granted Claire and Jane a shifting executory interest by providing that, if both D.A. and Knox passed away without any descendants before the trust's termination, the trust's assets were to be distributed to Claire and Jane as beneficiaries, either directly or through conservatorships. While the will relieved the trustees from having to render a periodic accounting to any court, it stated that the trustees "shall . . . account fully and completely annually, throughout the term of this [t]rust, to such income and/or corpus beneficiaries as there may be or[,] in the event such beneficiary is a minor or a ward, then to such beneficiary's guardian."

¶5. As stated, a month after executing her will, Brenda passed away on August 25, 2006. Her will was probated in Leflore County, and Knox was appointed her estate executor. Also upon his mother's death, Knox was appointed executor de bonis non of his father's estate. In November 2007, the chancery court awarded custody of D.A. to his paternal grandfather and step-grandmother, Carter and Linda Lang. In a subsequent judgment, the chancellor found that adoption by the Langs served D.A.'s best interests.

¶6. On February 8, 2008, Chancellor William Willard signed an order that addressed the disposition of numerous motions and petitions filed below by the parties. In so doing, the chancellor granted Claire's requests to withdraw her previously filed motion for an accounting of her mother's estate and her petition for Knox's disqualification as estate executor. The chancellor further ordered that upon the closing of Brenda's estate, Knox, as

3

executor, take the following actions:

> [L]ist the household goods and personal belongings of Brenda . . . , as well as lockbox contents[,] that came into his possession as [e]xecutor and . . . state where these items are presently located, and any items converted to his personal possession or disposed of for his benefit will be noted and charged against any [e]xecutor's fee, as may be determined and approved by this [c]ourt[; and]

> . . . .

> [F]urnish an accounting of [Brenda's] [e]state from the date of death to the date of any final decree granting Claire . . . [g]uardianship of [D.A.] due to the appeal on file at this time . . . and[] that Claire . . . is entitled to an accounting, **if and when she becomes a vested remainder beneficiary of this estate from the date of such vesting until delivery of assets to her**.

(Emphasis added).

¶7. Despite withdrawing her prior motion for an accounting, on August 7, 2015, Claire filed a petition for a full accounting of her mother's estate and testamentary trust. Claire's petition alleged that Knox and others associated with the administration of Brenda's estate had mismanaged and misappropriated estate and trust assets. Claire's petition further contended that, even though she was a remainder beneficiary of her mother's will, she still possessed the standing to demand an accounting. Jane also joined Claire's petition for a full accounting.

¶8. On September 15, 2015, Claire filed a petition for relief from various chancery court judgments, and a petition for compensatory and punitive damages. On January 4, 2016, she filed an amended petition for compensatory and punitive damages. In her amended petition, Claire sought to include claims against the various attorneys who represented the interests of Brenda's estate, the testamentary trust, and D.A.'s guardianship. On January 8, 2016,

4

Claire filed a motion seeking leave under Mississippi Rule of Civil Procedure 15(a) to admit her amended petition for compensatory and punitive damages. On January 19, 2016, Judge Michael Ward, who was specially appointed to the case, dismissed the claims against the attorneys after he found that Claire had failed to state a claim under Mississippi Rule of Civil Procedure 12(b)(6). On February 16, 2016, Claire filed a motion for leave to amend her petition under Rule 15(a). Claire's motion asked that she be allowed to amend her petition to include the claims against the attorneys and to allege "fraud and negligence per se with the correct specificity."

¶9. Each of the attorneys responded to Claire's motion to amend. In their responses, the attorneys noted that Claire had failed to "attach a proposed amended petition that would permit the [c]ourt to determine whether justice requires that leave to amend be granted." Furthermore, due to their prior dismissal from the litigation, the attorneys argued that, even if the court granted Claire's motion to amend, the amendments would not affect them.

¶10. On February 19, 2016, Knox filed a final accounting in his mother's estate and a petition to be discharged as executor. The final accounting was not set forth in the chancellor's final decree or made available to all interested parties. Instead, as provided in the final decree, Knox prepared the estate accounting and presented it in camera to the chancellor, D.A., and D.A.'s guardians, the Langs. On March 11, 2016, Judge Ward signed an order denying Claire's August 7, 2015 petition for a full accounting of her mother's estate and testamentary trust. Judge Ward acknowledged the prior court ruling stating that Claire would be entitled to an accounting "if and when she [became] a vested remainder

5

beneficiary" of her mother's estate. However, after determining that Claire failed to constitute such a beneficiary, Judge Ward denied Claire's petition for a full accounting. On March 21, 2016, Claire filed a motion for reconsideration of her petition for a full accounting.

¶11. Following a hearing on March 30, 2016, Judge Ward denied Claire's Rule 15(a) motion for leave to amend her petition with respect to the various attorneys involved with the estate, the trust, and D.A.'s guardianship. Judge Ward ruled that Claire failed "to state how she would amend her prior pleadings or . . . to attach a proposed amended pleading [that] would allow the [c]ourt to determine whether justice required that she be given leave to file amended pleadings[.]"

¶12. On May 6, 2016, Judge Ward signed a final decree in the matter. Judge Ward ratified Knox's final accounting and granted Knox's petition for discharge as estate executor. In discussing Claire's requests for a full accounting of her mother's estate and testamentary trust, Judge Ward found that the February 8, 2008 order denying her request for an accounting "was not only a final order but that the time to appeal that [o]rder ha[d] long since passed and . . . that the [o]rder of February 8, 2008, was an [a]greed [o]rder that all of the parties agreed upon while adjudicating all of the issues . . . contained in that [o]rder." Judge Ward also dismissed Claire's September 2, 2008 petition to contest Brenda's will and to demand a jury trial. Judge Ward found the September 2, 2008 petition was not only stale but was also filed in bad faith since, in the court's February 8, 2008 agreed order, Claire agreed to withdraw her previously filed petition to investigate the will's validity.

6

¶13. As to all other motions, petitions, and filings made by Claire and Jane, Judge Ward dismissed them, stating that the sisters possessed "no standing in this cause, nor are they beneficiaries of [their mother's e]state with standing to seek any relief from the [e]state." Judge Ward further concluded that the only persons with a vested interest in the administration of Brenda's estate were Knox, D.A., and D.A.'s adoptive parents, the Langs. As to D.A.'s testamentary trust, Judge Ward found the trust was never funded "due to the [e]state not being of sufficient size."

¶14. Aggrieved by the chancery court's various rulings denying their requested relief, Claire and Jane appeal.

## STANDARD OF REVIEW

¶15. This Court applies a limited standard of review on appeals from chancery court. *Jackson v. Mills*, 197 So. 3d 430, 437 (¶30) (Miss. Ct. App. 2016). If supported by substantial credible evidence, we leave a chancellor's factual findings undisturbed unless the chancellor applied an incorrect legal standard, was manifestly wrong, or was clearly erroneous. *Id.* We review questions of law de novo. *Id.*

## DISCUSSION

### I. Standing

¶16. On appeal, the parties disagree as to whether Claire and Jane have standing to request an accounting of their mother's estate and testamentary trust. Since standing is a jurisdictional issue, we review it de novo. *SASS Muni-V LLC v. DeSoto Cty.*, 170 So. 3d 441, 445 (¶12) (Miss. 2015). Standing is to be determined at the commencement of a lawsuit. *In*

*re Estate of Baumgardner*, 82 So. 3d 592, 599 (¶21) (Miss. 2012). Regarding the applicable

caselaw on standing, the Mississippi Supreme Court has stated the following:

> To have standing to sue, a party must assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law. An interest is deemed colorable if it appears to be true, valid, or right. An individual's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law. For a plaintiff to establish standing on grounds of experiencing an adverse effect from the conduct of the defendant/appellee, the adverse effect experienced must be different from the adverse effect experienced by the general public.

*SASS Muni-V*, 170 So. 3d at 446 (¶13) (internal citations and quotation marks omitted).

¶17. Mississippi precedent clearly establishes that vested remainder beneficiaries of a testamentary trust have standing to file suit and that holders of a shifting executory interest have some limited rights that can provide standing to file suit. *See Baumgardner*, 82 So. 3d at 600-01 (¶¶27-28); *Hemphill*, 245 Miss. at 46, 145 So. 2d at 461.[3] Claire and Jane claim they are vested remainder beneficiaries of their mother's testamentary trust while Knox asserts his sisters have an unvested executory interest. As previously discussed, the chancellor found Claire and Jane were unvested contingent remainder beneficiaries.

¶18. In applying precedent to the instant case, we find that Claire and Jane possess a shifting executory interest in their mother's testamentary trust. A review of the will's terms reflects that Brenda's estate vests in D.A. and Knox, but that D.A. and Knox inherit subject to a condition of survivorship. *See Hemphill*, 245 Miss. at 46, 145 So. 2d at 461. D.A. and Knox may be divested if the condition of survivorship is not fulfilled. If the survivorship

---

[3] *Cf. Cannon*, 59 Miss. at 302-05 (holding that contingent remainder beneficiaries could prevent a life tenant from future waste to the detriment of the inheritance).

condition is not fulfilled, D.A. and Knox are then divested of their interests, which shift to Claire and Jane as beneficiaries. Precedent establishes that, as the owners of a shifting executory interest, Jane and Claire possess limited rights to prevent future waste. *See id. See also Columbus & Greenville Ry. Co. v. City of Greenwood*, 390 So. 2d 588, 592 (Miss. 1980) (applying the *Hemphill* holding to find that the heirs of original land grantors possessed a reversionary interest capable of evaluation). "An executory interest is a future interest, which is held by a third person, that either terminates another's interest before its natural termination, or begins after the natural termination of a preceding estate." K.F. Boackle, Real Property—Deeds and Conveyances, 7 *Encyclopedia of Mississippi Law* § 62:29 (2d. ed. Jeffrey Jackson et al. eds.). "A shifting executory interest occurs when ownership shifts from one transferee to another upon the occurrence of the subsequent event." *Scott v. Brunson*, 569 S.E.2d 385, 387 (S.C. Ct. App. 2002). We now turn to a more specific review of the terms of Brenda's will and the legal consequences of those terms.

¶19. In applying caselaw to the terms of Brenda's will, we find the will's terms reflect that, in creating the testamentary trust, Brenda named D.A. the income beneficiary with the principal to be placed in trust until the earliest of either D.A.'s thirtieth birthday or his death. At either D.A.'s thirtieth birthday or his death, Brenda's will directed that the trust's principal be evenly divided between D.A. and Knox "per stirpes to include adopted children." The terms of the will next discussed disbursement of trust assets to beneficiaries who were under the age of twenty-one at the time of the trust's termination, or who died before the trust's termination. Finally, in establishing that D.A. and Knox inherit subject to a condition

9

subsequent of survivorship, the will stated as follows:

> If there are no surviving beneficiaries, descendants of deceased former beneficiaries, former beneficiaries who are living, or descendants of deceased former beneficiaries, then his or her interest shall be distributed share and share alike to the [c]onservatorships for my two daughters[, Claire and Jane;] should either one or both of them not have a [c]onservatorship at the termination of this trust[,] then distribute their portion outright to them.

¶20. Thus, Brenda's will established that, if D.A. and Knox failed to satisfy the condition of survivorship, they would be divested of their interests, which would then shift and be distributed to Claire and Jane. Accordingly, a review of Brenda's will reflects that she gave Claire and Jane a shifting executory interest in the assets of the testamentary trust.[4] As stated, Mississippi precedent reflects that holders of a shifting executory interest enjoy limited rights to enjoin the possessory owner from waste of the inheritance. *See Hemphill*, 245 Miss. at 38, 145 So. 2d at 457.[5] We now turn to a review of applicable and instructive Mississippi precedent.

¶21. In *Hemphill*, the supreme court explained that an executory-interest owner's limited right rests upon the constitutional provision for due process. *Id.* at 46, 145 So. 2d at 461. The *Hemphill* court found that Mississippi precedent and statutory law "place an independent value and significance on future interests, whether 'vested' or not." *Id.* at 47, 145 So. 2d at

---

[4] *See Hemphill*, 145 So. 2d at 457 (finding that individuals who possessed a shifting executory interest in land taken and allegedly damaged by the Mississippi Highway Commission possessed limited compensable rights in the land); *White v. Inman*, 212 Miss. 237, 256, 54 So. 2d 375, 381-82 (1951) (finding the testator's will devised to his daughter an estate in fee simple defeasible subject to an executory limitation).

[5] *Cf. Cannon*, 59 Miss. at 302-05 (holding that contingent remainder beneficiaries could not recover damages from a life tenant for past waste but could enjoin the life tenant from future waste to the inheritance's detriment).

462. The *Hemphill* court further explained that a contingent remainder interest "has achieved status as a protectable interest for many purposes" when the "contingent remainder is limited to an existing ascertained person[,]" like Claire and Jane in the instant case. *Id.* at 48, 145 So. 2d at 462. According to the *Hemphill* court, "[w]hen a contingent remainder is limited to an existing ascertained person[,] there is no question but that the courts will recognize the interest as having present existence." *Id.*

¶22. Thus, upon review of relevant caselaw and the record before us, we find the chancellor erred in denying Claire and Jane's request for an accounting of their mother's estate and testamentary trust. As holders of a shifting executory interest in their mother's estate, Claire and Jane possess limited rights to enjoin the possessory owners from future waste of the estate. *See id*. at 38, 145 So. 2d at 457.[6] As a result, we reverse the chancellor's judgment finding they lack standing to request an accounting, and we remand the case for further proceedings consistent with this opinion.

## II.    Rule 15(a) Motion to Amend

¶23. We next consider Claire and Jane's contention that the chancellor erroneously denied Claire's Rule 15(a) motion to amend her petition. The sisters argue that none of the various attorneys asserted they would suffer prejudice if the chancellor granted the motion to amend. We review the denial of a motion to amend for abuse of discretion. *Crater v. Bank of New York Mellon*, 203 So. 3d 16, 19 (¶7) (Miss. Ct. App. 2016).

---

[6] *Compare Baumgardner*, 82 So. 3d at 600-01 (¶¶27-28) (holding that vested remainder beneficiaries possessed standing to file suit), *Cannon*, 59 Miss. at 302-05 (holding that contingent remainder beneficiaries could enjoin a life tenant from future waste).

11

¶24. As previously discussed, Claire filed an amended petition for compensatory and punitive damages in which she sought to assert claims of fraud and negligence per se against the attorneys who represented the interests of Brenda's estate, the testamentary trust, and D.A.'s guardianship. Claire then filed a Rule 15(a) motion for leave to admit her amended petition. The specially appointed judge denied Claire's motion for leave to admit and dismissed her claims against the attorneys, finding that Claire failed to state a claim under Rule 12(b)(6). The special judge also granted the attorneys' motions to strike themselves as defendants due to Claire's failure to obtain leave to join them under Mississippi Rule of Civil Procedure 21.

¶25. Following the Rule 12(b)(6) dismissal of her claims, Claire filed a motion for leave to amend her petition under Rule 15(a) to include claims against the attorneys and to allege "fraud and negligence per se with the correct specificity." However, Claire's motion for leave to amend failed to provide the substance of the amendment to inform the court of what facts or acts constituted the fraud or negligence per se. *See* M.R.C.P. 9(b) (providing that fraud must be pled with specificity); *Faul v. Perlman*, 104 So. 3d 148, 156 (¶26) (Miss. Ct. App. 2012) (discussing the elements a plaintiff must show to establish negligence per se).[7] The motion to amend instead contained only bare allegations and no facts from which to determine the existence of a cause of action.

¶26. One of the attorneys identified in Claire's petition and amended petition filed a

---

[7] *See also Price v. Price*, 430 So. 2d 848, 849 (Miss. 1983) ("When a party proposes to amend his pleading, he should ordinarily make known to the trial court the substance of his proposed amendment.").

response that the other attorneys joined. In asking the court to deny Claire's Rule 15(a) motion to amend, the attorneys noted that Claire had failed to "attach a proposed amended petition that would permit the [c]ourt to determine whether justice requires that leave to amend be granted." The attorneys also noted they had been "dismissed as [respondents] . . . as a result of [Claire's] failure to obtain leave of court to add [them] as [parties]." Furthermore, the attorneys contended that, even if the court granted Claire's motion to amend, the amendments would not affect them because of their prior dismissal from the matter under Rule 21. As discussed, the record shows that Claire's motion for leave to amend indeed failed to inform the chancellor of what facts or acts constituted fraud or negligence per se.

¶27. Where a trial court dismisses a complaint under Rule 12(b)(6) for failure to state a claim, Rule 15(a) requires the trial court to freely give the plaintiff the opportunity to amend her complaints "when justice so requires." M.R.C.P. 15(a). As previously discussed, we will affirm the chancellor's decision "unless the discretion he used is found to be arbitrary and clearly erroneous." *Breeden v. Buchanan*, 164 So. 3d 1057, 1064 (¶27) (Miss. Ct. App. 2015) (quoting *Poole v. Avara*, 908 So. 2d 716, 721 (¶8) (Miss. 2005)). In the present case, we have the benefit of the chancellor's explanation since the record sets forth why he denied Claire's Rule 15(a) motion to amend. *See Breeden*, 164 So. 3d at 1064 (¶¶28-31) (finding an abuse of discretion where a chancellor failed to explain his denial of the plaintiff's Rule 15(a) motion). The specially appointed judge found that Claire had failed "to state how she would amend her prior pleadings or . . . to attach a proposed amended pleading [that] would

13

allow the [c]ourt to determine whether justice required that she be given leave to file amended pleadings[.]"

¶28. The record here demonstrates that Claire failed to meet her burden to sufficiently support an amendment of her petition. Furthermore, the chancellor dismissed the attorneys from the litigation under Rule 21 because Claire failed to obtain the court's leave to join them, and Claire filed no appeal of the attorneys' dismissal. *See Crater*, 203 So. 3d at 21 (¶16) (finding no abuse of discretion in the denial of a Rule 15(a) motion to amend where the motion only asserted claims against a nonparty and the claims were futile). For these reasons, we find no abuse of discretion from the chancellor's denial of Claire's Rule 15(a) motion to amend. *See id.* at 19 (¶7). We therefore affirm the chancellor's judgment with regard to this issue.

## CONCLUSION

¶29. We affirm the portion of the chancellor's judgment denying Claire's Rule 15(a) motion to amend her petition. However, upon finding that Claire and Jane, as holders of a shifting executory interest, have some limited rights, we reverse the portion of the chancellor's judgment holding that the sisters lack standing to request an accounting of their mother's estate and testamentary trust. We therefore remand this case so the chancellor may grant an accounting consistent with Claire and Jane's limited rights as holders of a shifting executory interest to prevent future waste.

¶30. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., GRIFFIS, P.J., BARNES AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE**

14

**WRITTEN OPINION. TINDELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, J. FAIR AND WESTBROOKS, JJ., NOT PARTICIPATING.**

**TINDELL, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶31. It is said that all good things must come to an end. In this case, it is time for a bad thing to come to an end.[8] I agree with the majority's finding that no abuse of discretion arose from the chancellor's denial of Claire's Rule 15(a) motion to amend. However, I disagree with the majority's finding that the chancellor erred by denying Claire and Jane's request for an accounting of the estate and testamentary trust of their mother, Brenda. Because I would affirm the chancellor's judgment bringing this case to an end, I concur in part and dissent in part from the majority's opinion.

¶32. I do not find *Hemphill v. Mississippi State Highway Commission*, 245 Miss. 33, 145 So. 2d 455 (1962), a case heavily relied upon by the majority, to be determinative of or applicable to the present case. In *Hemphill*, the discussion of the future executory interests centered entirely on the constitutional guaranty of protection from governmental taking of and damage to real property without compensation. *Id*. at 37, 145 So. 2d at 457. To ensure protection of that constitutional guaranty, the court therein focused on the potential for a compensable interest in property to those holding any and all "future interests, whether 'vested or not.'" *Id.* at 48, 145 So. 2d at 462. The appellants' standing question in *Hemphill* was grounded in that particular and limited executory interest and determined by the

---

[8] The estate has been open for over ten years. After voluminous pleadings by the Appellants, the assets of the estate have been depleted to a point that the trust cannot even be funded.

15

appellants' legal right to compensation for governmental taking of and damage to lands without compensation as provided in Article 3, Section 17 of the Mississippi Constitution. *Id.* at 37-48, 145 So. 2d at 457-62.

¶33.    Unlike *Hemphill*, Claire's accounting request infringes upon no constitutional right of any party with any future, shifting, contingent, remainder, or other interest. And, as stated by the majority, "[a]n individual's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law." Maj. Op. at (¶16) (quoting *SASS Muni-V LLC v. DeSoto Cty.*, 170 So. 3d 441, 446 (¶13) (Miss. 2015)) (internal citations and quotation marks omitted). The present case does not involve the legal right at issue in *Hemphill*, one recognized by law and set forth in Article 3, Section 17 of the Mississippi Constitution. The "vested or not" status of the shifting executory interests is an important distinction that must be considered. And furthermore, unlike the majority, I find that the sisters' executory interest has never vested.

¶34.    Brenda's will named D.A. the income beneficiary of her testamentary trust. At either D.A.'s death or his thirtieth birthday, the trust's principal was to be evenly divided between D.A. and Knox "per stirpes to include adopted children." The will then discussed the disbursement of trust assets to beneficiaries who were under twenty-one years old when the trust terminated or who died before the trust's termination. Finally, the will provided:

> If there are no surviving beneficiaries, descendants of deceased former beneficiaries, former beneficiaries who are living, or descendants of deceased former beneficiaries, then his or her interest shall be distributed share and share alike to the [c]onservatorships for [Brenda's] two daughters[, Claire and Jane;] should either one or both of them not have a [c]onservatorship at the termination of this trust[,] then distribute their portion outright to them.

16

¶35.    The will established that the trust assets vested in D.A. and Knox.  Their interests shifted to the sisters only after the natural termination of D.A. and Knox's estate and only if D.A. and Knox died with no descendants.  Based upon this reading of Brenda's will, I agree with the majority that Brenda provided the sisters with a shifting executory interest in her testamentary trust.  However, unlike the majority, I find that the language of Brenda's will gave the sisters a purely executory interest that has not become possessory.  Their shifting executory interest remains unvested and, as a result, they lack standing necessary to demand an accounting of their mother's trust.  *See Bridgforth v. Gray*, 222 So. 2d 670, 672 (Miss. 1969) ("So long as an executory interest remains a future interest, it is non-vested."). *See also* 31 C.J.S. *Estates* § 144 (2017) (recognizing that executory interests remain unvested until they become possessory).

¶36.    As a result, I would therefore affirm the chancellor's judgment that the sisters lack standing to request an accounting.  Accordingly, I concur in part and dissent in part from the majority's opinion.

**WILSON, J., JOINS THIS OPINION.**