------ • o • ------

FLOYD WILLIAMS *et al.*, Administrators, *v.* E. M. and R. R. RATCLIFF.

1. LAST WILL AND TESTAMENT: CONSTRUCTION OF DEVISE.—A devise unto John and William of one quarter section of land, " my late residence and farm; provided, however, that the children who are now living with me hold a home on said home plantation, until otherwise provided for," vests in the

10

children, who are living with the testator, an estate for life, determinable upon their being otherwise provided for, and in John and William a vested remainder in fee.

2. PROBATE COURT: SALE OF REALTY TO PAY DEBTS: ESTATES IN REVERSION OR REMAINDER MAY BE SOLD.—The Probate Court, for the purpose of paying the debts of a decedent, may decree the sale of an estate in reversion or remainder.

ERROR to the Probate Court of Lawrence county. Hon. John W. Oliver, judge.

Joseph Ratcliff, in 1851, in his last will and testament, made the following bequest: "I give unto John and William one quarter section of land, my late residence, and farm; provided, however, that the children who are now living with me hold a home on said home plantation, until otherwise provided for." The will contains a number of special bequests to the children of the testator, and concludes as follows: "All property held and claimed by me, not mentioned in this will, to be collected and advertised, and sold to the highest bidder. After the just demands against me are satisfied, the remainder of the amount of the sales to be equally divided between the youngest four; to wit, Richard, Lydia, Elinor, and Rachel."

In October, 1852, John and William Ratcliff sold to R. J. Ratcliff, the intestate of plaintiffs in error, the quarter section of land devised to them in the will of Joseph Ratcliff.

Plaintiffs in error, as the administrators of R. J. Ratcliff, at the August Term, 1867, of the Probate Court, filed their petition to sell the interest of their intestate in the land purchased by him in October, 1852, from John and William Ratcliff. The petition represents that the estate is insolvent; that they had previously obtained an order for the sale of all the other lands; and that the sale of this quarter section becomes necessary for the following reasons: 1st. That it is in the midst of the lands devised to be sold, and cannot be separated from them, and will not bring its value in the market unless all are sold together. 2d. That it is necessary for the payment of the debts.

Defendants in error answered the petition, stating: That they

are the daughters of Joseph Ratcliff, and that they were living with him at the time of his death; that they claim said lands under the will of their father, and that they are now in the possession of the same, and the only home they have. That they are both single, never having been married, and no other home has been provided for them. That they did not consent to the sale of the lands by John and William Ratcliff to R. J. Ratcliff; that they had no right to sell the same until they (defendants in error) were provided with a home. That there is no necessity to sell this tract of land to pay debts, and the sale of it will not enhance the price of the other lands.

The testimony adduced on the trial shows: That the estate was insolvent; that a sale of all the lands was necessary, and the sale of this quarter section in connection with the other lands, would materially enhance the price of all.

The court decreed that the land should not be sold, and dismissed the petition. From this decree plaintiffs in error prosecute their writ of error to this court.

*Wiley P. Harris*, for plaintiffs in error, argued: —

There are two points to be examined in this case.

1st. Does the power of the Probate Court to sell lands of decedents to pay debts on deficiency of personal assets, enable that court to decree the sale of an interest in remainder or reversion?

2d. Whether the will in this case gives an estate, or creates a trust in the parties resisting the sale?

The statute makes no exception of any kind of interest which the deceased may own in lands. The reversion or remainder is a legal estate, though not in possession. It may be conveyed by deed or devise, or may be assigned by the party in his lifetime; and its value can be estimated, if a remainder after life.

Whatever interest the deceased may have in property, is subject to his debts. Although, if, in the opinion of the court, the will in this case gives a life interest, or other interest having a remainder or reversion in the deceased it is still subject to the

payment of debts, and the court has the power to order the sale.

Such sale shall invest the purchaser *with such interest* as the testator or intestate had in the lands.    Rev. Code, art. 91, 447.

The decree dismissing the petition was therefore wrong in any view which may be taken of the will of Ratcliff, the ancestor of deceased.

The language of the will is too vague and uncertain to give any estate or interest to the respondents, or to create a trust in their favor.

The clause of the will which gave rise to the controversy, and which is now to be construed, is as follows : " I also give unto John and William one quarter section of land, my late residence and farm, provided, however, that the children who are now living with me hold a home on said home plantation, until otherwise provided for."

No extrinsic matters are brought to light by the respondents to aid in the interpretation of this clause, except that they were the children living with the testator at his death.   The age and condition of the children at that time are not disclosed ; nor is there any definite account of what the estate of the testator consisted.

The answer states that the respondents are unmarried, and it sufficiently appears that they are females.   These are the considerations which are to be taken in connection with the will.

The will does not direct or request John and William to *make provision* for *these children,* nor does it prescribe what the *provision shall be.*   The will directs Richard, the executor, to collect and settle the property, " not specifically named," and makes him executor, " so far as Lydia, Elinor, and Rachel (three of the younger children) are concerned."

The most rational view is, that whatever interest or privilege was secured to the respondents by the clause above quoted, in the " home plantation," was to continue until the residue with which the executor is charged with reference to these children was collected and settled ; for, as no person is expressly charged to make a provision, and no fund expressly provided out of

which that provision shall be made, it could only be made from that property which was given to them, and which was to be "collected and settled."

The words, therefore, "until they shall be otherwise provided for," would seem to import merely that, until their share of the estate was ready to be delivered to them, they should be permitted to *reside* on the home plantation.

This is the most rational *conjecture*, and yet it is but a *conjecture*. The respondents seem to think it meant *marriage*. This is natural to maiden ladies, whose minds may be supposed to be preoccupied by hopes connected with that event; but this is conjecture, and wills are never construed on conjecture. If the one first advanced be adopted, as furnishing a construction of the language, then we are bound to presume that the reception by them of all that was due them from the estate has occurred. It was their right to demand it after twelve months had elapsed. The will was probated in 1851.

But the uncertainty as to the *quantum* of interest, and the nature of the event which is to terminate it, render the bequest void, or, at all events, insufficient to create a trust.

The words "otherwise provided for" do not convey any idea of the nature of the provision to be made, nor by whom it is to be made. The words "hold a home on the home plantation" define no interest or estate as to quantity, quality, or value. It may be said that, at all events, they were to be allowed to reside on the plantation; but for what time? Was the occupation to be exclusive? The difficulty of defining the time which the occupation is to last, makes an insuperable difficulty. It cannot be affirmed what the testator intended.

It will be observed, in looking at decided cases, when the testator has provided for the continuance of persons in an office or employment connected with his property, or as tenant, that the office and its duties, or the terms of the tenancy, are susceptible of definite ascertainment. 1 Jarmyn on Wills, 330.

In *Lucas* v. *Lockhart*, 10 S. & M. 466, the testator expressly declared, that the children should be educated and maintained out of the *profits of the property*. In these cases, the question

of the court was whether the directions of the will were imperative. This, however, is a case where the uncertainty exists as to the *quantum* of the interest given. *Vide* 10 Vez., *Morrice* v. *Dunham*, 536.

In 9 Simon, *Jubber* v. *Jubber*, 503, the will directs that the executors should receive a "handsome gratuity."

The intention to bestow something was evident; yet the quantity not being stated, the provision was held void. *Vide* 2 Story's Eq. Ju. 475, and notes.

"A home until otherwise provided for," certainly does not give a life estate in any particular quantity of the land, and if it does, the remainder is clearly subject to sale ; and if a trust, it can be no more. But it is impossible for the court to define this trust, so as to declare definitely upon whom or upon what fund it is charged, and the precise extent of the trust itself. It is, therefore no obstacle to a decree of sale. It will also be seen that the respondents do not combat the allegation that the personalty is deficient.

*John D. Freeman*, for defendants in error, argued : —

1. The former petition and decree under the same are not included in this record. It is, therefore, incomplete, and the case is not in a condition to be heard on this account.

This same question was raised by the petitioners, and decided against them at the May Term, 1869, of the Probate Court ; from which there was no appeal, writ of error, or reversal.

2. The decree, at the instance of these plaintiffs, at a former term of the Probate Court, was final and conclusive, until sale had been made under the same, and the proceeds had been found insufficient.

Admitting that estates in remainder or reversion are liable to sale under legal process, when such appears absolutely necessary, still the necessity of it is discretionary with the court, who may order a sale of all the other, or part of the realty and personalty, as the circumstance may demand.

3. The decree of the court appealed from is not a final decree, and no appeal lies from it. Let the administrator discharge his

duty under the former decree, and if the amount prove insufficient, then there will be time enough to order a sale of the balance of the realty.

The policy of the law is not to sell, realty if possible to avoid it: and the court has observed this rule.

The court acted properly in guarding the interests of two unprotected females, which were given them by their father.

The point raised by Judge Harris does not spring from the record, nor was it adjudicated by the court below. There was no decree that the lands in question were not subject to the debts of the testator.

*W. P. Harris*, for plaintiffs in error, replied: —

The defendant in error has put in a technical defence that the case was previously decided by the same court, and no appeal or writ of error.

It was found that a sale of that *part of the tract* decreed by the court would be prejudicial to all concerned; and the proof is, that it would not pay the debts. The sale of the residue was *deferred* only.

The dismissal of one petition is not a bar to another for the same purpose; the first may be dismissed for want of proper proof of deficiency of assets, &c. Defendants offered no proof below of the former petition, so as to bring its character before the court, and it cannot now be made available. They can only make the proceedings on the former petition a part of the last by *producing the record in proof.*

This court cannot now see what was decided in the former petition, except from what is stated in the petition in this cause; and, according to that, the former petition was granted as to part of the lands.

From the present record, the court below decided finally not to order a sale, because of the supposed trust in favor of respondents.

The order of dismissal is final on the merits, since the proof shows a deficiency of assets beyond a doubt; and there is no *defence made on that point,* but purely on the ground that the

*trust* precludes the rights of creditors.    Then the point distinctly arises for the first time, on a final adjudication, that the rights of creditors were subordinate to the alleged trust; and the dismissal of the petition is, if unreversed, a bar to subsequent proceedings.    It is too late to suggest diminution of record, on conjecture particularly; and there is no diminution, for the former proceeding is clearly no part of this.

PEYTON, J., delivered the opinion of the court.

The plaintiffs in error, as administrator and administratrix of the estate of Richard J. Ratcliff, deceased, presented their petition to the Probate Court of Lawrence county, praying for an order to sell, for the payment of debts of the deceased, the following described tract or parcel of land, alleged to belong to their intestate, to wit: the north-east quarter of Section Twenty, in Township Six, of Range Eight, east.    In their petition they state, that, at a previous term of said court, an order had been made authorizing them to sell certain other lands belonging to their intestate, and that the land described in their petition was not included in said order, as it was supposed to be incumbered by a condition in the will of the ancestor of the vendors of said parcel of land to their intestate, and that they hoped to be able to make a settlement of the estate without a sale of it.    But they have since found that the personal estate and the lands ordered to be sold would not be sufficient to pay the debts of the decedent, and therefore ask that an order be made authorizing them to sell the additional quarter section of land specified in the petition, for that purpose.

The defendants in error, in their answer to said petition, insist that there is no necessity to sell said quarter section of land for the payment of the debts; that the intestate had but a reversionary interest therein, which was not subject to sale under a decree of the said court, and that they had an interest in and a right to possess and enjoy the same as a home, until otherwise provided for, under the provision of the will of their father, Joseph Ratcliff, deceased, which is as follows:—

"I also give unto John and William one quarter section of

land, my late residence and farm; provided, however, that the children who are now living with me hold a home on said home plantation, until otherwise provided for."

They aver that they are the children of the testator referred to in said provision of his will; that they are sole and unmarried, and were living with the testator on said plantation and farm at the time he made his said will, and have been residing thereon ever since, and that they have not been otherwise provided for.

The exhibits of assets and debts accompanying the petition, and the evidence upon the final hearing of the cause, show the insufficiency of the personal assets to pay the debts, and the necessity of resorting to the entire real estate for that purpose. It is admitted that John and William Ratcliff, the devisees of the quarter section of land specified in the petition, sold and conveyed the same to Richard J. Ratcliff, the plaintiffs' intestate.

Upon the final hearing of the cause upon petition, answer, exhibits, and proofs, the court refused to grant the prayer of the petition, and dismissed the same. And from this decree the plaintiffs now prosecute their writ of error in this court.

The only question for our consideration is, whether the said decedent, Richard J. Ratcliff, had such an interest in the land described in the petition as may be subjected to sale under a decree of the Probate Court for the payment of his debts.

Although not absolutely necessary to the decision of this case, yet we deem it not improper to determine what interest the defendants take in said land under the will of their father.

It is insisted by counsel for the plaintiffs, that the language of the will is too vague and uncertain to give any estate or interest in the land to the defendants, or to create a trust in their favor. In this view of counsel we cannot concur. We believe that it will be found that in very few cases are wills so defective and confused as to be incapable of being brought into harmony and intelligible meaning, by fair and allowable

construction, within the ordinary range of judicial administration; and that it is the duty of courts to uphold every instrument of a testamentary character, where the thing can fairly be done; and that it is little creditable to courts to evade just responsibility in such cases, by shielding themselves behind some antiquated case, which might seem to justify a decision against its validity on the ground of uncertainty, when, at the same time, every member of the court was convinced from the words of the will what the testator must have intended, and that he could have meant nothing else. And we should at the same time deprecate that latitudinarian mode of construction whereby courts have attempted to bridge over every chasm in the language, however broad and incomprehensible, by a lawless resort to conjecture based upon no recognized canons of construction; or, what is still more objectionable, if possible, by an utter disregard of the natural and ordinary meaning of the words used, and guided only by that undefined light of extrinsic circumstances, in no just sense admissible, in aid of the legal construction of the instrument.

The will very clearly and distinctly provides that the defendants shall hold a home on the land; the only uncertainty in the provision arises from the contingent character of the event which was to terminate their holding the same as a home; and the uncertainty of that event makes the estate devised to them a freehold for life.

An estate for life is defined to be a freehold interest in lands, the duration of which is confined to the life or lives of some particular person or persons, or to the happening or not happening of some uncertain event. 1 Hilliard's Abridgment, 36, § 1; 1 Lomax's Digest, 32, § 1.

In this case, the defendants have an interest in the land for a home until otherwise provided for; and, as they may not be otherwise provided for during their lives, they, therefore, take an estate for life, determinable upon their being otherwise provided for. *Hurd* v. *Cushing*, 7 Pick 169, 175. And the intestate had a vested remainder in fee upon the determination of the defendants' interest therein. And as it is the policy of

our laws to charge the whole of a man's estate with the payment of his debts, except what is exempt therefrom, and this policy, being founded in manifest justice, ought to be enforced in this case. We think, therefore, the interest of the intestate in said land is real assets, and ought to have been decreed by the Probate Court to be sold for the payment of his debts. For these reasons we think the court erred in dismissing the plaintiffs' petition.

The decree will, therefore, be reversed, and the cause remanded for further proceedings in the court below, in accordance with this opinion.