HARRIET IDA HOSKINS ET AL. *v.* JAMES F. AMES ET AL.

1. JURISDICTION. *Chancery courts. Infants. Remainders. Sales. Constitutional law. Constitution* 1832, *art.* 4, *sec.* 16.

   The chancery courts established under constitution 1832, art. 4, sec. 16, had no jurisdiction of a suit by the life tenant against an infant remainderman to sell the infant's remainder and reinvest the proceeds, as being for the best interest of the life tenant and the infant.

2. STATUTE OF LIMITATIONS. *Code* 1857, *art.* 1, *p.* 398; *code* 1871, § 2147; *code* 1880, § 2664; *code* 1892, § 2730. *Life estate. Remainder.*

   The statute of limitations does not begin to run against an action of ejectment by a remainderman until the termination of the particular estate.

3. SAME. *Hutchinson's code, p.* 830, sce. 5; *code* 1871, § 2173; *code* 1880, § 2693; *code* 1892, § 2760.

   The several statutes of limitations applicable to suits to recover lands sold by order of court have no application to this case.

FROM the circuit court of Noxubee county.

HON. GUION Q. HALL, Judge.

Mrs. Hoskins and another, appellants, were the plaintiffs in the court below; Ames and another, appellees, were defendants there. The opinion states the case.

*Brame & Richardson* and *W. T. Houston,* for appellants.

The circuit court decided this case on the idea that appellants were barred by the statutes of limitation. The several statutes sought to bar the suit are: (1) Hutchinson's Code, sec. 5, p. 830; (2) code 1871, § 2173; (3) code 1880, § 2693; and (4) code of 1892, § 2760, all relating to limitation of actions for the recovery of land sold by decree of court.

1. The provisions of Hutchinson's Code (sec. 5, p. 830) have no application for at least five good and sufficient reasons:

(*a*) It was repealed before it began to operate on the right of appellants, by the adoption of the code of 1857, art. 2, p. 43, and by the code of 1871, and at that time, even in 1871, neither of the plaintiffs were barred under it because they were not twenty-six years of age. Their disabilities had not been removed five years.

(*b*) There was no evidence that the sale was made in good faith, and the purchase money paid, etc., as required by the very terms of the statute. *Jeffries* v. *Dowdle*, 61 Miss., 504; *Richardson* .v. *Brooks*, 52 Miss., 120.

(*c*) The statute only barred a right of entry; appellants right of entry did not accrue until 1899, at the death of the life tenant.

(*d*) The sale in question was not made by an executor, administrator, guardian, or other person within the meaning of that statute. "Other person," as there used, means person *ejusdam generis. Leinkauf* v. *Barnes*, 66 Miss., 207; *Ice Co.* v. *Greenville*, 69 Miss., 86.

(*e*) Appellants are not claiming "by descent or inheritance;" they are the minors whose lands, it is claimed, were sold.

2. The code of 1871, § 2173, does not apply because by its terms, so far as it relates to sales made before its adoption, it embraces only administrators, executors, and guardians' sales made by order of the probate court.

3. Code 1880, § 2693, has no application because it relates only to sales made after its adoption.

4. Code 1892, § 2760, cannot be applied for a like reason.

The vice chancery court had no jurisdiction to order the remainder in lands belonging to infants to be sold at the suit of the life tenant. The English courts of equity were without such power, and no statute authorized such a proceeding. The whole chancery proceeding was utterly void. *West* v. *Robertson*, 67 Miss., 216; *Carmichael* v. *Browder*, 3 How. (Miss.), 252; 1 Pomeroy's Eq. Jur., p. 66, sec. 78. The appellees

cannot pose as innocent purchasers. *Stewart* v. *Matheny*, 66 Miss., 21; *Deason* v. *Taylor*, 53 Miss., 697; *Allen* v. *Poole*, 54 Miss., 323; *Plant* v. *Shryock*, 62 Miss., 821; *Bowmar* v. *Peine*, 64 Miss., 99.

*J. A. Orr*, for appellees.

Did the chancery court have the power to divest the minors of the estate in remainder created by the will of their grandfather?

"A court of chancery shall be established with full jurisdiction in all matters of equity." Constitution of 1832, art. 4, sec. 16.

"No dispute can be raised over the authority of equity judges in general to assume jurisdiction over the seizen and property of infants." Tiedeman Eq. Jur., sec. 245, citing eighteen American cases, including *Johns* v. *Smith*, 56 Miss., 727. The principle we invoke, discussed and settled as stated, by Tiedeman, in 2 Story Eq. Jur., sec. 1357 and 1327.

"A sale of infants' real estate will be ordered if beneficial." Flint on Trusts, sec. 189.

"A court of chancery has inherent power to order the sale of the real estate of infants." *Goodman* v. *Winter*, 64 Ala., 410.

The court having decided the case and entered the judgment, all parties being lawfully in court, what force has the judgment?

This court, in *Murrah* v. *State*, 51 Miss., 655, answered this question that a judgment of a court of general jurisdiction imports absolute verity.

But it is contended that these plaintiffs were infants, and their rights, under their grandfather's will, were too sacred to be dealt with by the court. In reply to that contention, Freeman on Judgments (3d edition), sec. 513, says that, "An infant is as much bound by a decree in equity as a person of full age, . . . he can neither by bill of review or original

bill nor by any other proceeding, impeach it so as to prejudice the interests of a *bona fide* purchaser without notice.'' And this contention of plaintiffs is overwhelmed by the numerous cases cited by Freeman in his book on Judgments in sec. 132. The following sections of Freeman are full of good law which will compel the plaintiffs to '' comply with and abide by '' the decree of the court of 1853, now venerable and hoary with the mantle of judicial sanctity over it, secs. 116, 124, 131, 134, 151.

According to 1 Daniel on Ch. Pr., * 164, infants were bound by the decree. A decree in chancery is the equal of a judgment in force and dignity. Freeman on Judgments, sec. 420.

In England the purchaser is bound to see that a proper application is made of the purchase money paid by him, where there is to be a reinvestment, either by operation of law or by a decree of the court under which the sale is made. Not so in America. Freeman on Void Sales (edition of 1877), sec. 39, states the American rule: '' One who purchases at a judicial, probate or execution sale cannot be deprived of his title by secret frauds or irregularties in which he has not participated. . . . . The validity of his title is not destroyed by the embezzlement of the money which he has paid to the person authorized by law to receive it,'' citing many American cases. The same rule is given by Flint on Trusts and Trustees in his chapter on ''Application of the Purchase Money,'' sec. 302. This question is elaborately discussed in *Elliott* v. *Merriman*, 1 Leading Cases in Equity (3d Am. ed.), 92.

My second proposition is that plaintiffs, if they ever had any rights against the decree and sale, have not invoked a remedy which can relieve them. Many of the authorities referred to above touch on the binding force of a judgment of a court until it is reversed by proper methods. Judgments cannot be attacked collaterally. This decree, if wrong, might have been destroyed in many ways—legal methods—an appeal, a bill of review, a supplemental bill, an original bill, etc. This action

of ejectment, nearly forty-eight years after the decree, the plaintiffs having come of age nearly thirty years ago, is wholly insufficient to mend the broken link in the chain of title. 1 Herman on Estoppel, sec. 335, 336, places Welbourne's title on a firm foundation. The decree and the proceedings thereunder must be respected. And so does Freeman on Void Sales, sec. 14, citing many cases.

The decree of the chancery court divesting the title of these plaintiffs, who were minors, cannot be collaterally attacked. Sivley's case, 57 Miss., 712; Sledge's case, 57 Miss., 222; Enochs' case, 57 Miss., 465; Sadler's case, 59 Miss., 572; Ames' case, 72 Miss., 760.

Our last proposition is that the plaintiffs are barred by a perfect troop of statutes of limitation. One of the plaintiffs was thirty-one years old in 1880, and the other thirty-one in 1882. The decree was rendered May 4, 1853. Bills of review were barred as to both in 1884, two years after they became twenty-one. Code of 1857, p. 40; Code of 1871, § 2160; Code of 1880, § 2681; Code of 1892, § 2751.

Appeals barred under all of the codes in three years. The filing of bills in chancery to recover lands barred under all of the codes in ten years. But the statutes from which plaintiffs have no escape is found on page 830, sec. 5 of Hutchinson's code. Substantially it is the same in all of the codes since 1848, and is § 2760, code 1892. Section 2760, code of 1892, is the code of 1848, except that the code of 1892 omits the saving clause to those under disabilities. The decisions hold that this statute cures all defects, no matter from what cause, even when the court did not have jurisdiction to appoint the guardian who made the sale—or without notice—and if the proceedings are regular, as in this case, if not in good faith, if the land has passed to a *bona fide* purchaser (as in Sanders' case, 65 Miss., 288); and, lastly, even if the constitution was violated in the sale, the statute stands firm. The judgments and decrees of

courts of general jurisdiction must be received, and bind all parties unless reversed or set aside by lawful methods.

Argued orally by *J. A. Orr*, for appellee.

TERRAL, J., delivered the opinion of the court.

This is an action of ejectment for certain lands in Noxubee county. The appellees obtained a verdict through a peremptory instruction in their behalf. The appellants are remaindermen under the last will and testament of Edmund Hatch, who died in 1851, leaving a last will and testament in which he devised a life estate to the mother of appellants and the remainder in fee to them. In 1853 the vice-chancery court at Macon, upon the petition of the life tenant and her husband, decreed a sale of the entire real estate—*i. e.*, of the life estate and also of the remainder—which was purchased by W. B. Welbourne, under whom the appellees claim. The life tenant and her husband were made commissioners for the sale of said estate, and they executed their office without bond and at private sale, in compliance with the decree of the court. The decree of sale required the proceeds to be reinvested in other real estate under the same limitations as the land sold; but there is nothing in the record to show such reinvestment, and so, there being no implication that appellants ever received any benefits of the proceeds of said sale, no question of estoppel arises in the case.

The questions presented are: (1) whether the sale was legal; (2) whether the statute of limitations bars the right of appellants.

1. The constitution of 1832, art. 4, sec. 16, declared: "A separate superior court of chancery shall be established, with full jurisdiction in all matters of equity." In 1848, in *Freeman* v. *Guion*, 11 Smed. & M., 58, it was held that this section of the constitution referred "to the system of equity in force in

this state, as derived from the English system and modified by our legislation."

In England the rule is well settled that equity has no inherent power to sell the real estate of an infant as being for its best interest or for reinvestment. Lord Chancellor Hardwicke, declared by Lord Campbell to be the most consummate judge who ever sat in the court of chancery, in *Taylor* v. *Phillips*, 2 Ves. said: "There is no instance of this court's binding the inheritance of an infant by any discretionary act of the court. As to personal things, as in the composition of debts, it has been done, but never as to the inheritance, for that would be taking on the court a legislative authority, doing that which is properly the subject of a private bill." And since that time, a period of more than one hundred and fifty years, we find no case in the English decisions that contravene the doctrine established in that case. The English parliament was accustomed, at the suggestion of the judges, to pass a bill authorizing the court of equity to decree a sale of the infant's real estate for reinvestment; but the court of its own authority, as an equity court and without the power conferred by a legislative act, has always declined to order the sale of the inheritance of an infant.

Edmund Hatch, in his will, devised a life interest to his daughter and a fee to her children, his grandchildren. It is the clear intention of the testator that the life tenant should have no power to dispose of the fee, and yet, if by a petition in the chancery court it can invest him with the power of sale, the intention of the testator is defeated. The power to make the devise is useless if equity can, in effect, annul it. Many American courts hold to the English doctrine on this subject, while many also hold that equity may decree the sale of lands of an infant whenever it shall be for its interest to have a sale of them made. In reference to these American cases we are disposed to repeat what was said by the court in *Freeman* v. *Guion*, 11 Smed. & M., above quoted, as most, if not all, the American cases, holding a doctrine adverse to the English rule,

have been decided since the adoption of our constitution of 1832, and of necessity it was not adopted with any reference to their holdings.

A list of the authorities on each side of the question may be found in the notes to the case of *Richards* v. *Ry. Co.* (106 Ga., 614; 33 S. E. Rep., 193), in American and English Decisions in Equity, p. 560 *et seq.* Without any criticism of the cases, we content ourselves in referring to the above book, where the learned reader will- find all the cases on this subject commented upon by the author.

2. The life tenant died in 1899, and until her death there was no right of action in the appellants. We are of the opinion that the statute of limitations did not commence to run against appellants until the death of their mother, and they are not barred. *Gibson* v. *Jayne,* 37 Miss., 164.

*Reversd and remanded.*