HAMILTON *et al. v.* CITY OF JACKSON.

(Division B. March 31, 1930.)

[127 So. 302. No. 28323.]

Franklin, Easterling & Rosenthal and Luther Manship, all of Jackson, for appellants.

**W. E. Morse** and **Green, Green & Potter,** all of Jackson, for appellee.

288

Argued orally by **Lamar F. Easterling**, for appellant, and by **Garner W. Green**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The small tract of land in question was conveyed on December 3, 1888, by Jones S. Hamilton and his wife, Fannie B. Hamilton, to the Light, Heat & Water Company, a corporation, which corporation later conveyed the same to the city of Jackson. In the deed from Hamilton and wife to the water company, there is this provision: "To have and to hold the aforesaid property so long as it shall be used to carry out the purposes of the act of incorporation of said" Light, Heat & Water Company.

On the 12th day of October, 1904, said Jones S. and Fannie B. Hamilton, both now deceased, made and delivered unto A. J. Hackett a warranty deed to certain lands, which by its descriptions covered and embraced this particular tract, the deed being an absolute fee simple without any exceptions or reservations, and, through a direct chain of mesne conveyances from A. J. Hackett, the city of Jackson now holds whatever title and right of title that was conferred by said second deed of the Hamiltons.

It was the original purpose in fact of the parties to the conveyance first hereinabove mentioned that the said small tract of land should be used for waterworks purposes, and the same is still being so used; but in the growth of the city the immediate locality of the tract has become a residential section, and the city, not now need-

ing all the tract for waterworks purposes, desires to convert the greater part of it into residence lots in order to accommodate the rapid growth in population and to prevent the presence of an unoccupied and unimproved tract within a highly desirable residential section to the detriment of a harmonious municipal development in that locality.

To that end the city has attempted to sell to private parties all that portion of the tract not now needed for the original purpose, but its attempt has been met with the question whether its deed will convey a fee-simple title, without which title purchasers will not accept. Wherefore, proceeding under the regular mode in chancery to cancel clouds, the city filed its bill against all the heirs at law of Jones S. and Fannie B. Hamilton for a settlement of the question whether the city now owns the fee-simple title claimed by it. Upon the hearing, the chancellor decreed in favor of the city, and the Hamilton heirs have appealed to this court.

The chancellor held, as shown by his written opinion, that the quoted clause in the original Hamilton deed constituted a conditional limitation, and not an estate upon condition subsequent. Some of the authorities would hold that the words used are equivalent to a condition subsequent. If this view were taken of this case, there would be an immediate end of the inquiry, for our court has already heretofore in effect held that the reversionary rights in a case of a condition subsequent are alienable, and that the heirs are in full privity with the ancestor. See, for instance, Yazoo & M. V. R. Co. v. Lakeview Co., 100 Miss. 281, 56 So. 393.

But we shall consider the case as did the chancellor, and as the parties by their briefs, have in the main elected to consider it, namely, that there is a conditional limitation. So viewing the provision in the deed here involved, it is the contention of appellants that, since no limitees over, who shall take upon reverter for condition broken, are mentioned or designated in the original deed, then, until the event of condition broken shall transpire,

there is no person other than the grantee who has any title in the land which is in any wise subject to conveyance, and that, when the condition is broken, the property reverts and thereupon vests only in those persons who can bring themselves into the class of heirs of the person creating the estate, at the time when the reverter happens, and that these take, not by descent as heirs, but by representation. The contention is, to state it otherwise, that under such a limitation there is only a future possibility of a reverter, and that, since the contingency which would mature the possibility may never happen and thus the title may remain in the grantee forever, the said possibility is not an estate, is not alienable, is not assignable, is not subject to execution or attachment; that it is even not devisable; that the takers upon condition broken take not at all as heirs, but solely by representation; and that therefore there is not such privity between the representatives and the ancestor as would bind them to the warranty of the ancestor, as would ordinarily be the case between ancestor and heirs.

Such were the refinements under the common law at the time of the coming into existence of the several commonwealths in this country, and such were the necessities in the maintenance of its surviving feudal principles, that it may be conceded, for the purposes of this case, that the contentions stated in the foregoing paragraph are substantially in accord with the common law on the subject.

Wherefore we immediately pass to a consideration of the effect of our statute, section 2762, Code 1906 (section 2421, Hem. 1927, Code), upon the question at issue. That section is as follows: "Any interest in or claim to land may be conveyed, to vest immediately or in the future, by writing signed and delivered; and such writing shall have the effect to transfer, according to its terms, the title of the person signing and delivering it, with all its instruments, as fully and perfectly as if it were transferred by feoffment with livery of seizin, notwithstanding there may be an adverse possession thereof."

This statute first appeared in our Code of 1857. Of it our court, after a review of the common law, and the restrictions upon alienations of land not in the possession of the grantor, in Cassedy v. Jackson, 45 Miss. at page 407, said: "This is the common law as to the effect of adverse possession upon conveyances of real estate. But it has been the policy of modern times to remove all restraints from the free alienation of property. And in pursuance of that policy the statute of 1857 provides that any interest in or claim to real estate may be disposed of by deed or will, and livery of seizin shall not be necessary. . . . This changes the rule of the common law above discussed upon this subject, and removes all restraints upon the alienation and transfer of real estate. . . ." The same statute had been enacted in Virginia in 1849. Of it the supreme appellate court in that state, on February 3, 1857, in Carrington v. Goddin, 13 Grat. (Va.) 587, said, in substance, that no more comprehensive terms could have been used, and that it was sufficient to embrace a conveyance to any sort of right of entry upon condition broken. In Young v. Young, 89 Va. 675, 17 S. E. 470, 23 L. R. A. 642, it was held that, under the statute, a contingent remainder could be conveyed, although only a naked possibility and not subject to attachment. In Wilson v. Langhorne, 102 Va. at page 640, 47 S. E. 871, 874, referring to the statute and to the decision of the court in Carrington v. Goddin, it was said further: "The court in that case indulges in no refinement of construction. It is content to give to plain words their usual and everyday meaning, and the interpretation there placed upon the statute did away forever with the niceties by which the devolution of property had theretofore been embarrassed and hindered, and made capable of disposition by deed or will any interest in or claim to real estate." The court then refers to 2 Minor's Institutes (3 Ed.), p. 416, as to the abounding effect of the statute, and cites and quotes Nutter v. Russell, 3 Metc. (Ky.) 163, at page 166, wherein the Kentucky court, referring to a similar statute which had been enacted in

that state and to other decisions wherein it had been held that a naked possibility was not assignable or releasable, said: "But it is unnecessary to decide the point . . . for, according to our own statutes, 'any interest in, or claim to, real estate, may be disposed of by deed. . . .' The effect to this enactment is to obviate at once all the difficulties growing out of the distinctions which had been established, by judicial construction, between such estates as were alienable and such as were not. It will not be doubted, we suppose, that under this statute every conceivable interest in, or claim to, real estate, whether present or future, vested or contingent, and however acquired, may be disposed of by deed or will." Compare the learned opinion in Moore v. Sharpe, 91 Ark. 407, 121 S. W. 341, 23 L. R. A. (N. S.) 937, dealing with substantially the same statute.

Under these decisions, interpretive of this statute, and which interpretations we hereby adopt, the entire remaining interest of the Hamiltons—call the original deed as creating a conditional limitation, a condition subsequent, a contingent remainder, a determinable fee, a qualified fee, or a naked possibility, or whatever name may be pleased to be attached—was alienable by them, and, being so, was the subject of a warranty. From which it follows that every vestige of the said remaining interest, potential or otherwise, in short, the full and absolute fee-simple title, passed by the warranty deed of Jones S. and Fannie B. Hamilton to A. J. Hackett on October 12, 1904, and, having so passed, it passed also as to the heirs of the Hamiltons; and, whether these be called heirs, or denominated as representatives, in either case there was nothing left to go to them, whatever might be the events of the future.

The other questions argued have been disposed of by the findings of fact by the chancellor, which findings are sufficiently sustained by the record.

Affirmed.