IN RE ESTATE OF LULA SIMS, DECEASED
SIMS, et al. *v.* FRITH, et al., AND ROY ELLZEY, ADMR.

No. 39764          November 7, 1955          83 So. 2d 93

*Phillips & McLendon*, McComb, for appellant.

*Roach & Jones,* McComb, for appellee.

Roberds, P. J.

This proceeding involves an interpretation of the will of Lula Sims, who departed this life October 19, 1952. The specific questions are, first, what estate was vested in Oma Sims by said will, and, second, whether the will vested in Oma Sims the right of physical possession and control of the corpus of the estate.

This is the will: "This is my last will and testament. My name is Lula Sims, I live in the City of McComb, State of Mississippi. I have no forced heirs. In the event of my death, I make the following bequests: I give and bequeath to sister, Oma Sims during her natural life, the use and usufruct of all the property I die possessed of, real, personal and mixed, and wheresoever situated, and dispense her from giving bond and surety. I give to my sisters, Patti Sims Fly and Maggie Sims Watkins, or their heirs, all the property I die possessed of, subject to the use and usufruct thereon in favor of my sister, Oma Sims, as above set forth, with the exception of my

home, located in the City of McComb, State of Mississippi, which I will and bequeath to my nephew, Wilborn Sims Frith, in the hope that he may be able to continue it as a home. I name my nephew, James Mitchel Fly executor of this my last will and testament, with full seizin and without bond. Written, dated and signed by me this fifteenth day of January, in the year one thousand nine hundred and fifty one.

"s/ Lula Sims

"Filed for record October 29, 1952
"Recorded November 18, 1952
"Roy Ellzey, Clerk"

Maggie Sims Watkins has died and her heirs are Wilborn Sims Frith and Margaret H. Fahs, two of the appellees. On the first question appellants contend that the will vested in Oma Sims such of the corpus as she desired or needed for her support and maintenance. Appellees contend she was vested only with the income from the estate.

At the time the will was executed and at the time of the death of testatrix the estate consisted of a promissory note for $21,800.00, bearing interest, and two deposits in banks aggregating $1,714.90, a total personal estate of $23,514.90, and a house and lot in the City of McComb, Mississippi, the value of which is not shown. The parties have agreed that Oma Sims may have possession of the house and lot. That question is not before us. The promissory note has been collected. All the personal estate now consists of cash money in the bank. On the first stated question the chancellor held that the will only vested in Oma Sims the income and usufruct of the personal property. The testatrix wrote this will herself and her meaning seems to us clear. It says "I give and bequeath to Sister Oma Sims during her natural life the use and usufruct of all the property I die possessed of, real, personal and mixed, and wheresoever situated * * *". She devised the remainder of her estate "* * *

subject to the use and usufruct thereon * * * as above set forth.'' These words are clear and unambiguous. She vested in Oma Sims only the use and usufruct of the property.

"In general, the 'use' or 'usufruct' of a thing does not mean the thing itself, but the right to use, enjoy, hold, or occupy, and have the fruits thereof. If the thing is in the form of real estate, the use includes its occupancy or cultivation, or the rent which can be obtained for the same, and if it is money or its equivalent, the use, generally speaking, consists of the interest which it will earn.'' Linton v. Howard, 128 N. W. 793, 163 Mich. 556.

In Brown v. Franklin, 157 Miss. 38, 127 So. 561, the will, by its first disposing clause, devised to Miss Mattie Lou Brown "all my property both real and personal.'' The next provision reads "Miss Brown is to enjoy the income from all my property until her death.'' The Court, construing both provisions together, held that Miss Brown was entitled only to the income from the property during her life.

It is noted in this connection that Lula Sims had a sizable estate. Apparently Oma Sims was a rather elderly person. So far as this record shows, she had no dependents. The disposing words were directed to the real as well as the personal estate. Seemingly the rent from the house and lot in McComb and the income from the personal property were ample to properly maintain and support Oma Sims, and the testatrix knew that. ■■ ■ We affirm the holding of the chancellor as to the extent of the estate vested in Oma Sims.

On the second question, the right of Oma Sims to have possession and control of the corpus of the personal property, the chancellor held that she did not have such right by the terms of the will. In that we think the chancellor was in error. Her intent to vest such possession and control in Oma Sims is clear and unmistakable. After vesting in Oma Sims the right to the income and

usufruct of the property she "dispensed her (Oma Sims) from giving bond an security." The reference to bond could not have applied to the income from the property because Oma Sims has the right to use that in any manner she desires. That provision as to bond was based upon the assumption that Oma Sims was going to have physical control of and handle the estate, otherwise, there was no reason to refer to a surety bond. Liability on her part could arise only from mismanagement or dissipation of the corpus. While Oma Sims was vested with the right to possess and control the property, that right is not without restriction. The remaindermen also have rights. The chancellor ordered Oma Sims to repay the administrator of the estate $11,000.00 it is claimed James Mitchell Fly, the named executor in the will, and to whom letters were issued, had paid to her. The pleadings of appellees say this money was never paid to Oma Sims; that this was collusion between her and Fly; that this money has been dissipated and expended under a fraudulent arrangement between Fly, executor, and Oma Sims, and that such corpus was not available to the remaindermen under the will. Fly was appointed executor without bond, as the will provides, and he had resigned as executor, and Roy Elzey the chancery clerk, had been appointed administrator with the will annexed when this matter was heard by the chancellor. We think the pleadings raised a question as to the proper management of the estate and whether Oma Sims had intact the $11,000.00. No proof was taken thereon. It is the duty of the chancery court to protect the interest of all parties. Whether delivery of the corpus of the personalty to Oma Sims will endanger the interest of the remaindermen is an important question to right and justice in this cause. We think proof should be taken and the facts bearing upon the danger of dissipation of the personalty should be established to see that the rights of all persons are protected. A court of equity can impose restrictions to guarantee that protection. Barmore v. Gilbert, 151 Ga.

260, 14 A.L.R. 1060. We affirm his conclusion that Oma Sims was entitled only to the income and usufruct of the property. We hold further that she, under the wording in the will, had the right to possession of the personalty, but that such right must be construed and enforced in accordance with the rights of the remaindermen and that restrictions and guarantees should be applied to her possession if the facts should establish to the satisfaction of the chancellor that the corpus of the estate may be dissipated or lost to the remaindermen. The cost of the appeal will be assessed equally between appellants and appellees.

Affirmed in part, reversed in part and remanded.

*Hall, Holmes, Ethridge* and *Gillespie, JJ.,* concur.

### ON SUGGESTION OF ERROR

December 12, 1955                      83 So. 2d 764

HALL, J.

Appellants have filed a vigorous suggestion of error. Being satisfied with our conclusions reached in our decision of the case, we would make no response thereto except for the fact that appellants challenge our statement that the pleadings say that this money was never paid to Oma Sims. Counsel say that they have searched the record in this cause from cover to cover and fail wholly to find any statement in any of the pleadings that could logically be construed as supporting the statement. In paragraph 6 of the answer and cross-bill, found on page 60 of the record, it is specifically charged that Oma Sims never received said amount or any portion thereof.

Suggestion of Error overruled.

*Roberds, P. J.,* and *Holmes, Ethridge* and *Gillespie, JJ.,* concur.