HEMPHILL, et al. *v.*
MISSISSIPPI STATE HIGHWAY COMMISSION

No. 42348 October 8, 1962 145 So. 2d 455

*Norman C. Brewer, Jr.,* Greenwood, for appellants.

*Maurice R. Black,* Carrollton, for appellee.

ETHRIDGE, J.

This case concerns an executory interest in land, following a defeasible fee, but to shift to named takers only upon an uncertain event. The principal questions are whether the owners of this estate have a compensable interest in lands taken and allegedly damaged by the State Highway Commission for highway purposes, and whether and how such an interest is capable of evaluation. We hold that this particular executory interest is a compensable one under the constitutional provision guaranteeing compensation for property taken or damaged by the state, but pretermit for the present a decision on specific methods of evaluating it, pending a hearing on remand upon evidence pertaining to value and a decision on that issue by the trial court.

Appellants, Vassar D. Hemphill, Jr., and M. Simpson Hemphill, sought damages for the alleged wrongful taking by the State Highway Commission (appellee) of their executory interest in 3.14 acres of land, and for damages to the balance (about 116 acres) of the family homestead. The case was heard on pleadings and stipulation. The decree of the Chancery Court, First Judicial District of Carroll County, adjudged that appellants had no "vested" interest in the land at the time the Commission purchased it from the present possessory owners, and dismissed the bill of complaint.

Mrs. Ida Martin Hemphill died in 1952. Her holographic will was probated, and there is no question concerning her competency to execute it. The will and a codicil provided in part as follows:

". . . I want Everett and Vassar to be executors with out bond, *Everett to have the home place* me china and Silver and househole effects there will be some things the others may want but most every thing goes to Everett as the others will have homes. . . .

"Codicil

"Everett if James ever wants to build out here give him land to build on give James the salad plates some of my cut glass *I Everett dies before myrtis and she marries again or dies I want what I left Everett to go to Vassar Jr and Simpson.* . . ."

The significant parts of the devise are italicized. Everett M. Hemphill, testatrix's son, and his wife, Mrs. Myrtis W. Hemphill, defendants and appellees herein, have lived continuously on the land in question before and since the death of testatrix. Vassar D. Hemphill is also a surviving son of testatrix. Apparently testatrix's husband was deceased. The complainants-appellants, Vassar D. Hemphill, Jr. and M. Simpson Hemphill, are testatrix's grandchildren.

On March 17, 1960, Everett M. Hemphill and wife, Myrtis W. Hemphill, conveyed by warranty deed to

the State Highway Commission the 3.14 acre tract for a consideration of $1,575. Thereafter the Commission entered on the land and constructed a highway over it. Hence the state has taken whatever interest complainants have in this small tract. The remaining acreage is the homestead, not taken but allegedly damaged.

The original bill of complaint named the Commission as the sole defendant, and sought substantial damages. By order of the court, complainants made Everett and Myrtis Hemphill defendants, but sought damages only from the Commission. Its answer denied that complainants owned any interest in the land or were entitled to any damages. The Commission filed a cross-bill against Everett and Myrtis Hemphill, averring that, if the Commission is liable to complainants, the cross-defendants (under their warranty of title) are obligated to reimburse the Commission for such liability as it may have. The answer of Everett and Myrtis Hemphill admitted that they had only a ''life estate'' in the land, but asserted that previously they thought they had the right to convey the entire title during their lifetime. They admitted the Commission was entitled to credit, on any recovery received by complainants, for the full amount received by Everett and wife.

Appellants contend they are entitled to compensation for the taking and damaging of their interest; that they have a vested remainder, and the codicil should be read by inserting before the word ''Everett'' the word ''when'', and not ''if'', and it should read ''when Everett dies'' rather than ''if Everett dies''; that this would vest in Everett and Myrtis life estates, with remainders to appellants.

The Commission says that the will vests a fee simple estate in Everett Hemphill, and the codicil is not sufficient to modify this devise, but expresses only a wish or desire, and is precatory in nature; and if incorrect in this, the codicil means nothing more than ''if'' Everett

dies before his wife, then the gift to Myrtis until her remarriage or death, whichever is earlier, with remainder to appellants; that the devise gives them nothing more than a contingent remainder, or an estate upon condition subsequent, Everett predeceasing his wife; and unless and until this happens, appellants have no "vested" estate but only a contingent future interest, which is too speculative and uncertain for protection under the constitutional provision stating that private property shall not be taken or damaged for public use except upon due compensation. Miss. Const. 1890, Sec. 17.

The chancery court agreed with the Commission. Inserting in the codicil the word "if" before "Everett", it held Everett was given a fee simple title, and appellants' interest was not "vested", because it could not take effect unless Everett died before his wife. Hence appellants were not entitled to compensation. The bill was dismissed.

## I.

██ ██ What estates in the "homeplace" were conveyed by the will and codicil? The two must be considered together. Otherwise the codicil cannot be given any operative effect, and this would be inconsistent with testatrix's intent. 57 Am. Jur., Wills, Secs. 611, 612. Its ascertainment involves an attempt to discover what were the ideas existing in testatrix's mind, and the determination of whether her intention was expressed in such a way as to give it legal effect and validity. Hence there are two elements in testamentary interpretation, an internal and external one. It originates in intention and is perfected by expression. Curtis, A Better Theory of Legal Interpretation, 3 Vand. L. Rev. 407 (1950).

██ ██ Testatrix was an unlearned writer, and, considering all of the surrounding circumstances and the terminology, we think she intended the word "Everett", in the codicil, should be preceded by the word "If".

This is further evidenced by the capital letter "I" preceding the word "Everett". The former makes no sense in the context, and apparently was intended to be the first letter of the word "If". Mrs. Hemphill thought the underlined part of the codicil should be conditional.

The only consistent manner of applying it would be to read, "If Everett dies before Myrtis", etc. There was no certainty he would predecease his wife, but, if he did, testatrix intended his widow would have only a possessory estate until her remarriage or during her life, whichever was the earlier, and desired the remainder to go to her grandchildren, within the blood line, and not to her daughter-in-law. Appellants' argument is not consistent with the context and the words used. It is unreasonable, because surely Mrs. Hemphill would not have said *"When* Everett dies before Myrtis", since she could not predict whether he would predecease his wife. The codicil should be read with the word "If" before the word "Everett".

█ █ Words omitted from a will may be supplied, provided it is necessary to effectuate the testatrix's expressed intention. This principle of construction should be used with caution, and is to be considered in the light of the converse rule, that a court will not make or rewrite a will under the guise of construction. Richmond v. Bass, 202 Miss. 386, 32 So. 2d 136 (1947); 95 C. J. S., Wills, Sec. 609. The criterion designated by Mr. Justice Holmes as "the externality of the law" simply reflects that we must ask what the words used in the instrument would mean "in the mouth of a normal speaker of English using them in the circumstances in which they were used. . . ." Holmes, The Theory of Legal Interpretation, 12 Harv. L. Rev. 417 (1899), also in Holmes, Collected Legal Papers, 203-204 (1920); see 1 Restatement, Contracts 226-236 (1932). We are satisfied that, measured by both internal and external stand-

ards, Mrs. Hemphill intended this construction, and the words which she used adequately expressed that fact.

The effect of the devise is, we think, a devise in fee simple of the "homeplace" to Everett Hemphill; but, if he dies before his wife, then to her (Myrtis) until her remarriage or death, whichever is earlier, with remainder to Vassar, Jr. and Simpson.

■■ ■ This is the interpretation reached by the chancellor. It is the only one which seems to be consistent with testatrix's intention as derived from the context and the words which she used. The effect of the will, therefore, is to devise to Vassar, Jr. and Simpson an executory interest, not a vested or contingent remainder. The form of the words used and their operative effect support this conclusion. They do not classify as either a vested or contingent remainder. Simes and Smith, The Law of Future Interests (2d Ed. 1956) Secs. 103, 138, 141.

The will devised to Everett the "homeplace", but, in the stated event, that preceding estate of Everett would be cut off. An executory interest cuts off the preceding estate when the event on which it is limited happens. Simes and Smith, Sec. 64. The estate in fee simple absolute is in a person other than the conveyor, but upon the happening of the event the estate shifts to another person or persons. Simes and Smith, Secs. 191, 221-232; 1 American Law of Property (1952), Secs. 4.53-4.58; 2 Powell, Real Property (1950), Sec. 279. Hence the executory interest in Vassar, Jr. and Simpson is subject to a condition which is not certain to occur, the death of Everett before his wife. Simes and Smith, Sec. 222. Moreover, while ordinarily the estate which vests on the happening of an event named in an executory interest is a present fee simple, it may be, as here, a life estate (in the widow), or until her remarriage, followed by a remainder (in Vassar, Jr. and Simpson). Simes and Smith, Sec. 225.

## II.

Mrs. Myrtis Hemphill has conveyed to the Commission her interest. The question is whether the owners of the balance of the executory interest, Vassar, Jr. and Simpson, are entitled to compensation for the taking and damaging by the Commission of their estate. Is appellants' executory interest of a sufficiently substantial character to be given the protection of Miss. Const. 1890, Sec. 17? It provides: ''Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; . . .'' This issue requires an analysis of an executory interest and pertinent statutes.

Illinois Central RR Co. v. State of Miss., 94 Miss. 759, 48 So. 561 (1909), defining property protected by Const. Sec. 17, said it includes the right and interest which one has in land, including every species of valuable right and interest in it; that value is the price deemed equivalent to utility, and compensation is that which constitutes or is regarded as an equivalent; and it is difficult to conceive of such a thing as property wholly separated from the element of value. ''Just compensation to the extent of that value was an absolute and constitutional condition precedent to the exercise of the right to take property from the owner under the right of eminent domain.''

 Miss. Code 1942, Rec., Sec. 831, provides: ''Any interest in or claim to land may be conveyed to vest immediately or in the future, by writing signed and delivered; and such writing shall have the effect to transfer . . . the title of the person signing and delivering it, . . .'' This statute removes all restraints on the *inter vivos* transfers of interests in real estate. Hamilton v. City of Jackson, 157 Miss. 284, 127 So. 302 (1930). They may vest immediately or in the future.

Code Sec. 657 gives the power "to devise all the estate, right, title, and interest in possession, reversion, or remainder", which a person has in land. Hence, in addition to the right to convey future interests in land which may vest in the future (Sec. 831), one may devise them under Sec. 657. These statutes authorize the conveyance of a possibility of reverter either by deed or will. Hamilton v. City of Jackson, 157 Miss. 284, 127 So. 302 (1930); Ricks v. Merchants National Bank and Trust Company of Vicksburg, 191 Miss. 323, 2 So. 2d 344 (1941). They change the rule of the common law and remove all restraints upon the *inter vivos* and testamentary alienation and transfer of real estate, including interests "vesting" in the future, such as executory interests. Ricks v. Cole, 200 Miss. 122, 26 So. 2d 782 (1946); Alexander v. Richardson, 106 Miss. 517, 64 So. 217 (1913).

■■■ Owners of future interests are subject to partition, provided they are made parties defendant in the partition action by persons having possessory estates, and unborn takers of the future interest are reached by virtual representation. Miss. Code 1942, Rec., Secs. 961, 962. Copeland v. West, 202 Miss. 106, 30 So. 2d 610 (1947), held that contingent remaindermen have such an interest as requires they be made parties, if they are to be bound by the proceedings. "Their rights are vested now by the terms of the will; the only question is whether and when they will be entitled to the enjoyment thereof." The purpose of the 1946 amendment to the cited statute "was to require that known living contingent remaindermen be made parties to the proceeding." The act "protects the constitutional rights of all parties." See 1 American Law of Property (1952), Secs. 4.91-4.97. Prior to the 1946 amendment, partition was a possessory proceeding only, and the court could not adjudicate rights of owners of future interests. Lynch v. Lynch, 196 Miss. 276, 17 So. 2d 195 (1944).

■■ A court of equity will under certain circumstances order a sale of property affected with a future interest, if this is necessary to preserve it for the benefit of all interested parties, and will set up a trust in the proceeds, to which the future interest will attach. Lambdin v. Lambdin, 209 Miss. 672, 48 So. 2d 341 (1950), was a suit by life tenants against contingent remaindermen, born and unborn. The court authorized execution of an oil and gas lease or sale of the property, and its conversion into funds for the benefit, respectively, of the life tenants and contingent remaindermen. 1 American Law of Property, Sec. 4.98; but see Hoskins v. Ames, 78 Miss. 986, 29 So. 828 (1901).

■■ The owner of an executory interest has certain limited rights to enjoin the possessory owner from waste of the inheritance, and to recover damages for injuries which diminish substantially its value. 1 American Law of Property, Sec. 4.104. Cannon v. Barry, 59 Miss. 289 (1881), held that contingent remaindermen could not recover from a life tenant damages for past waste, but could enjoin him from future waste to the detriment of the inheritance.

■■ The owner of a future interest in land is entitled to have his title established in equity, to have adverse claims quieted, and to enjoin third parties from acts which impair the permanent value of the land. 1 American Law of Property, Sec. 4.107. Since a future interest is alienable, *inter vivos* creditors of the deceased owner can reach it. Ibid., Sec. 4.81; Williams v. Ratcliff, 42 Miss. 145 (1868).

■■ Moreover, the owner of a future interest must have his "day in court", or its equivalent, before a claim affecting it can effectively secure judicial sanction. This rests upon the constitutional provision for due process. Hence a living owner of a future interest is generally a necessary party to any litigation affecting it. 2 Powell, Real Property, Secs. 294, 295; Russell v.

Federal Land Bank, 180 Miss. 55, 176 So. 737 (1937).
This same principle should apply to a proceeding to
condemn or take property by the state.

These characteristics illustrate "the unique feature
of the concept of the future interest in Anglo-Ameri-
can law." It is that "a future interest is property which
now exists." 1 American Law of Property, Sec. 4.1.
It is distinguished from a present interest in that the
privilege of possession or enjoyment is future and not
present. Hence "the preferred view today is that all
varieties of future interests are existing interests."

This doctrine of the nature of future interests is more
logical and factually consistent than the old theory of
estates which took into account only so-called "vested"
interests. Any interest which takes away a part of the
sum total of rights, powers, privileges and immunities
which go to make up a fee simple absolute is an existing
interest. Ibid., Sec. 4.1.

■■ Moreover, the word "vested" is meaningless
unless more precisely defined. It is often used in at
least four senses: An interest in land has become pos-
sessory or is vested in possession; it is an estate, vested
in interest, rather than the possibility of becoming one;
it is transmissable on death; it has acquired the degree
of certainty which under the Rule against Perpetuities
an interest must acquire within lives in being and 21
years or fail. Leach and Logan, Cases on Future In-
terests and Estate Planning (1961), pp. 253, 254.

■■ In summary, the precedent and statutory his-
tory of the law of this state place an independent value
and significance on future interests, whether "vested"
or not. A future interest, such as the executory one
owned by appellants, is property which now exists. The
privilege of possession and enjoyment is future and not
present, but it is an existing interest. ■■ Further-
more, Miss. Const. Sec. 17 was intended to protect all
interests in property, and to prevent the state from

taking the same without due compensation to the owners.

Simes and Smith (Sec. 136) analyze the pertinent factors with particular clarity:

"It is frequently said that 'vested rights' are the subject of the protection of constitutional guaranties, such as the due process clause of Federal and State Constitutions and the clause prohibiting the taking of private property for public use without compensation. Doubtless the term 'vested' when so used begs the question, since it is assumed that it has already been determined that the right in question will be protected. It seems clear, therefore, that the term, if used at all in connection with constitutional questions, should not be regarded as synonymous with the same expression when used in the law of real property. In other words, there is no rule to the effect that a vested remainder is protected under Federal and State Constitutions but a contingent reminder is not. Indeed, it would be most unfortunate if such were the law; for many contingent future interests are of far more substantial character and more likely to take effect in possession than some future interests which are vested subject to be divested. . .

"The contingent interest, though perhaps not an estate, has achieved status as a protectable interest for many purposes. . . . to leap to the conclusion that because some contingent interests are too tenuous to bear the label of 'property' that therefore all contingent interests are not 'property' is totally unwarranted. When a contingent remainder is limited to an existing ascertained person there is no question but that the courts will recognize the interest as having present existence. The wide acceptance of that fact makes it clear that the interest is 'property' in the usual sense of the word. Whether a given future interest is of a sufficiently substantial character to be given the protection of a particular

constitutional guaranty would seem properly to depend upon factors other than the classification as vested or contingent.''

## III.

██ ██ Inconsistent with these factual and legal characteristics of future interests, the general rule is that the condemnor is not required to pay compensation and takes the property free from inchoate dower, reversionary rights, contingent remainders, and executory interests. It must pay compensation for taking ''vested'' remainders. However, the condemnor must pay for contingent remainders and reversionary interests where they constitute the remaining interests in fee and property after a life estate or term of years. Otherwise the condemnation award for payment goes entirely to the holder of the defeasible fee. 1 Orgel, Valuation under the Law of Eminent Domain (2d Ed. 1953), Sec. 119; Jahr, Eminent Domain (1953), Sec. 129; 2 Nichols, Eminent Domain (3d Ed. 1950), Secs. 5.22, 5.221; 29 C. J. S., Eminent Domain, Sec. 199; Stoyles, Condemnation of Future Interests, 43 Iowa L. Rev. 241, 246 (1958); Browder, The Condemnation of Future Interests, 48 Va. L. Rev. 461, 472 (1962); Note, 46 Cornell L. Q. 631 (1961).

A different position is suggested by the Restatement of Property, called the imminency or probability test. The holder of a fee simple defeasible is entitled to the entire award in condemnation if the event on which that estate is to end is not probable within a reasonably short period of time. If on the other hand the stated probability exists, the award is to be shared by the parties proportionately to the value of their two interests. 1 Restatement, Property, Sec. 53; U. S. v. 2,184.81 Acres of Land, 45 F. Supp. 681 (W. D. Ark., 1942), 48 Va. L. Rev. at 474-475; U. S. v. 1,119.15 Acres of Land, 44 Supp. 449 (E. D. Ill., 1942); Terminal Coal Co. v. U. S., 172 F. 2d 113 (3d Cir. 1949); Chew v. Comm.,

400 Pa. 307, 161 A. 2d 621 (1960); Browder, supra, 48 Va. L. Rev. 474-475.

Courts which have applied the Restatement's probability test recognize the harshness and unreality in many instances of the general rule. They constitute procedents reflecting a trend away from it. Moreover, there are other soundly reasoned cases, in a minority, holding that a future interest in land which is not tenuous and which is capable of evaluation is a compensable right when taken or damaged by the state for public use. Brugh v. White, 267 Ala. 575, 103 So. 2d 800 (1958); Callison v. Wabash Ry. Co., 219 Mo. App. 271, 275 S. W. 965 (1925); Charleston & W. C. Ry. Co. v. Reynolds, 69 S. C. 481, 48 S. E. 476 (1904); U. S. v. 53¼ Acres of Land, 139 F. 2d 244 (2d Cir., 1943); Duke Power Co. v. Rutland, 60 F. 2d 194 (4th Cir., 1932); Stubbs v. U. S., 21 F. Supp. 1007 (D. C., N. C. 1938); National Metropolitan Bank v. Stoner, 177 F. 2d 37 (D. C. Cir., 1949); Terminal Coal Co. v. U. S., 76 F. Supp. 136 (W. D. Pa., 1948), Aff'd., 172 F. 2d 113 (3d Cir., 1949); Wheeler v. Kirtland, 27 N. J. Eq. 534 (1875); In re Cropsey Ave., 268 N. Y. 183, 197 N. E. 189 (1935); U. S. ex rel TVA v. Spiceland, 52 F. Supp. 40 (W. D. Ky., 1943).

Reasons given by the courts for denial of recovery for the taking of future interests are unconvincing. It has been said they are not estates in land but only possibilities that can be ignored. The cases and statutes deny this. It is said that performance of a condition subsequent is rendered impossible by condemnation and is therefore void. Yet the taking by the state is the act which often creates the impossibility. And it is usually stated that a future interest is so remote, speculative, or contingent that it is impossible to estimate its value. This indicates the main problem. The interest must be capable of present evaluation. This is a question of fact for the trial court, after hearing

evidence on that issue. The courts use a variety of valuation methods in making awards for other condemned interests which have been classified as compensable. See 2 Orgel, Sec. 246; Miss. State Highway Comm. v. Madison County, 242 Miss. 471, 135 So. 2d 708 (1961). Moreover, contingent remainders and executory interests have been given constitutional protection in other respects.

We decline to follow the majority rule which denies compensation to owners of all future interests taken by the state. There is no rational basis for such a general doctrine. It is not equitable, and is not consistent with other legal principles related to such existing estates in land. In each case it should be determined whether the particular interest is of a sufficiently substantial character to warrant protection, or whether it is too tenuous for that purpose.

■■ ■ Appellants' executory interest is not tenuous but of a substantial nature. The takers are identified and living. The uncertainty lies only in the event upon which the defeasible fee will end. One who possesses an interest which he can sell has an interest for which he ought to be paid upon taking or condemnation by the state. The Commission's statutory authority in effect recognizes this. Miss. Code 1942, Rec., Sec. 8023.

■■ ■ The condemning authority which has brought an eminent domain proceeding has the burden of proof to show the fair market value of the property which is being taken, and the damages to the balance of the tract. Miss. State Highway Comm. v. Hillman, 189 Miss. 850, 864, 198 So. 565 (1940); Miss. State Highway Comm. v. Treas, 197 Miss. 670, 20 So. 2d 475 (1945); see Jahr, Eminent Domain, (1953), Sec. 241. ■■ ■ However, where the holder of a future interest has initiated an action, as here, to obtain his alleged share of the award, he has the burden of proving the value of his interest taken and damaged. City of Santa Monica

v. Jones, 104 Cal. App. 2d 463, 232 P. 2d 55, 58 (1951);
Chicago W. D. Ry. v. Metropolitan W. S. El RR, 152
Ill. 519, 38 N. E. 736 (1894); Stoyles, Condemnation of
Future Interests, 43 Iowa L. Rev. at 255; see Miss. State
Highway Comm. v. Hillman, 189 Miss. at 864.

██ ██ The owner of a future interest must fulfill
two requirements in order to receive compensation:
First, he must be the owner of a compensable interest
in the condemned property. Appellants meet this test.
Second, the interest must be capable of evaluation. See
42 Iowa L. Rev. at 245. Since the chancery court held
that appellants had no compensable interest, because not
"vested", and therefore dismissed the bill, the trial court
did not reach and the parties presented no evidence
on value. We do not pass on that issue, but reverse and
remand this cause for further proceedings to determine
the value, if any, of appellants' executory interest taken
and allegedly damaged by the Commission.

There may be several alternative formulae and meth-
ods for determining value. In Miss. State Highway
Comm. v. Madison County, 242 Miss. 471, 135 So. 2d 708
(1961), the County, in a proceeding brought by it, ob-
tained damages to its reversionary lessor's interest in
sixteenth section, school lands, which were subject to
surface leases with remaining terms of fourteen years.
The jury apparently accepted testimony of an expert
appraiser. Although the trier of facts was not obligated
to accept that particular evidence, it could weigh that
and other testimony in reaching an acceptable conclusion
as to the quantum of damages. See also Stoyles, Con-
demnation of Future Interests, 43 Iowa L. Rev. at 256-
257; 5 Powell, Real Property (1962), Secs. 665-669.

██ ██ Since the event upon which the defeasible fee
of Everett Hemphill would be terminated is his death
prior to that of his wife, an actuarial estimate of the
probable duration of his and his wife's lives would be
pertinent, based upon life expectancy or mortality tables.

Perhaps also relevant would be an actuarial table on remarriage by Mrs. Hemphill in the event Everett predeceased her. See 5 Powell, Sec. 666, p. 118; cf. Miss. Code 1942, Rec., Sec. 6998-19(j). There are other methods of protecting a future estate. See generally, Lambdin v. Lambdin, 209 Miss. 672, 48 So. 2d 341 (1950); Estate of Sims v. Frith, 225 Miss. 311, 83 So. 2d 93 (1955); 5 Powell, Secs. 665-669; Cf. Comment, Federal estate Taxation of future Interests, 33 Miss. L. J. 217 (1962).

No specific method of evaluation of appellants' future interest and damages is prescribed. The trial court is entitled to make its own findings in this respect on adequate evidence.

Reversed and remanded.

*McGehee, C. J., and Kyle, Gillespie and Rodgers, JJ.,* concur.